Siegel, Appellant, *v.* Engstrom.

Argued September 30, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John W. Beatty,* with him *Knox, Pearson & McLaughlin,* for appellant.

*H. Robert Hampson,* with him *Hampson and Hampson,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, November 14, 1967:

This appeal follows a final decree dismissing the plaintiff's complaint in equity after the court sustained defendants' preliminary objection on the ground of laches. Plaintiff sought to enjoin defendants from producing oil and gas on land owned by defendants, Engstroms, and to have the defendants render an accounting.

Plaintiff avers, in his complaint, that he and the Engstroms entered into a written oil and gas lease on

August 23, 1962. The lease, which was recorded, was for a term of two years. It granted to the plaintiff the exclusive right to produce oil and gas from the 107-acre land of the Engstroms, and was to remain in force so long thereafter as oil and gas is produced from the premises, or as operations continue for the production of oil and gas.

The lease also provided that: "In case operations are not commenced within three months from this date [August 23, 1962], then this grant and all rights hereunder shall immediately become null and void as to both parties, and no declaration or notice on the part of either shall be necessary to forfeit or terminate the same, and no liability hereunder from either to the other shall result. Provided that second party may prevent such forfeiture or termination from Nov. 23, 1962, to Aug. 23, 1964 and no longer, by paying to the first party at the rate of one Dollars [sic] per acre per year until such operations are commenced."

The plaintiff, in compliance with the terms of the obligation, avers in his complaint, that he "tendered to the defendants, Engstrom, a check dated November 23, 1962, in the amount of $26.75, being one-fourth of $107.00, yearly rental, and said check was accepted and cashed by the defendants, Engstrom." Further averments were that: on or about February 21, 1963, another check for $26.75 was paid to defendants Engstrom which they cashed; that on or about May 23, 1963, the plaintiff tendered another check in the amount of $26.75 to the Engstroms, but they refused the check and subsequently returned it to the plaintiff; that on or about June 28, 1963, plaintiff was informed by counsel for the Engstroms, by letter, that they considered the lease terminated; that on or about August 13, 1963, by letter, the plaintiff's check of May 23, 1963, was returned to him; that on or about August 23, 1963, plaintiff tendered a check for $26.75 to the Eng-

stroms, but his transmittal letter was returned un-opened, together with a letter from Engstroms' counsel dated September 13, 1963, in which letter plaintiff was given specific, formal and written notice that "if he attempted to exercise his legal rights under the terms of the said lease, or attempted to go on land owned by the defendants Engstrom he would be considered a trespasser."; that plaintiff continued to tender the subsequent rental payments to the Engstroms, all of which were refused and returned to the plaintiff; that "On August 29, 1963, the defendants Engstrom and the defendants Weldon entered into a gas and oil lease for the said premises, notwithstanding the fact that both parties had actual and constructive notice of plaintiff's prior rights to the said gas and oil on the premises."; that "on or about September 10, 1963, plaintiff gave formal written notice to defendant Weldon Producing Company of his rights under his prior lease"; that "on or about September 30, 1964, defendants Engstrom and defendants Weldon entered into another gas and oil lease for the said premises"; that some time prior to October 7, 1964, the defendants Weldon commenced drilling operations on the premises; that on or about October 7, 1964, plaintiff gave the defendants, Weldon, written notice to cease drilling operations on the premises; and that during the month of October, 1964, the drilling operations of the defendants, Weldon, produced oil on the premises in paying quantities and the production has continued. Plaintiff, on January 8, 1965, instituted this action in equity to enforce his rights under the lease to him from the Engstroms dated August 23, 1962, to enjoin defendants from drilling, producing and marketing oil, and to require all of the defendants to render an accounting to him.

Laches may be determined on preliminary objections if laches clearly appears in the complaint. *Stahl v. 1st*

*Pa. Bank. & Trust Co.*, 411 Pa. 121, 128 [and cases cited therein], 191 A. 2d 386 (1963) ; *Silver v. Korr*, 392 Pa. 26, 29, 139 A. 2d 552 (1958), in which we said: "Laches can be taken advantage of by demurrer or by preliminary objections without requiring a plea or answer to bring it to the notice of the Court; however, in such a case, the laches must be clearly apparent from the bill or petition itself: Bowie Coal Co. Petition, 368 Pa. 102, 82 A. 2d 24, and cases cited therein." In the instant case, it appears, from the complaint, that "On or about June 28, 1963, the plaintiff was informed by attorney Samuel F. Bonavita, attorney for the defendants Engstrom, by letter dated June 28, 1963, that the defendants Engstrom considered the said gas and oil lease null and void, and terminated." The plaintiff knew on or about June 28, 1963, that defendants Engstrom considered the lease terminated, and yet, in spite of the consistent disregard of plaintiff's lease by the defendants Engstrom and the other defendants, the plaintiff did not file his complaint until January 8, 1965. The relevant events demonstrating a consistent refusal of the defendants to honor the plaintiff's lease as recited above, clearly show the plaintiff to be properly chargeable with laches. The trial court aptly said : "In the instant case, the facts shown in the pleadings indicate that Plaintiff could have successfully enforced his rights on August 29, or at least by September 13, 1963. He could have enjoined Defendants Weldon from entering on the property and drilling for oil. He took no action but stood idly by, except for notice of his claim while Defendants Weldon carried out the term of their lease; drilled a well which proved successful and produced oil in paying quantities. Only then, after Defendants Weldon brought in a productive well and oil was being marketed from the property and royalties paid to Defendants Engstrom, did Plaintiff act to enjoin Defendants and enforce his

own rights. To allow the Plaintiff the remedy he seeks under the present circumstances would certainly be highly prejudicial to Defendants."

We said, in *Wilson v. King of Prussia Ent., Inc.,* 422 Pa. 128, 133, 221 A. 2d 123 (1966): "The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice. See, Brodt v. Brown, 404 Pa. 391, 172 A. 2d 152 (1961) and Lutherland, Inc. v. Dahlen, 357 Pa. 143, 53 A. 2d 143 (1947). The question of laches is factual and to be determined by an examination of the circumstances: Mulholland v. Pitts. Nat. Bank, 418 Pa. 96, 202 A. 2d 857 (1965)." The trial court further stated that: "Plaintiff's delay in the instant case is not of great length; August 29, 1963 (or September 13) to January 5, 1965, but no excuse has been offered and the attendant facts and circumstances are such that it would be unjust to allow Plaintiff to proceed in his present action. Plaintiff allowed Defendants Weldon to take the gamble of drilling. He stood by while they lived up to the terms of their lease, expended the time and money to drill a successful well and put it into production. He then filed his equity suit to oust Defendants and take over the property. Under the facts clearly appearing in the Complaint, it would certainly work an injustice to allow Plaintiff to proceed."

The court, under the circumstances of this case, properly denied injunctive relief on the ground of laches. It should not, however, have dismissed the complaint, but, rather, certified the action to the law side of the court. See *Wilson v. King of Prussia Ent., Inc.,* supra; *Allegheny Plast. v. Stuyvesant Ins. Co.,* 414 Pa. 381, 200 A. 2d 775 (1964); *Hampsey v. Duerr,*

401 Pa. 578, 166 A. 2d 38 (1960). While equitable relief may not be afforded because of laches, appellant may well have an action for damages resulting from any breach of his contract which occurred.

The decree of the court below is vacated and the case remanded with directions to certify the matter to the law side of the court. Each party to pay own costs.

Mr. Justice COHEN concurs in the result.