373 A.2d 1329

John B. LEEDOM, Relator,

v.

William THOMAS, Respondent.

Supreme Court of Pennsylvania.

Argued April 18, 1977.

Decided April 22, 1977.

Opinion June 3, 1977.

194

Cadwallader, Darlington & Clark, E. Dillwyn Darlington, Feasterville, for petitioner.

Stuckert, Yates & Krewson, John J. Kerrigan, Jr., Newtown, for respondent.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

PER CURIAM.

This action in quo warranto was commenced on February 24, 1977, invoking the original jurisdiction of this Court.[1] Relator John B. Leedom contends that he was duly elected to the office of district justice of the peace for magisterial district 7–2–01 and that he has been wrongfully denied his public office.

The writ of quo warranto is granted: respondent is removed from office and relator is declared entitled to the office to which he was elected. See *Berardocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976).

NIX, J., dissents.

Opinions to follow.

OPINION OF THE COURT

ROBERTS, Justice.

This action in quo warranto was commenced in February 24, 1977, invoking the original jurisdiction of this Court.[1] Relator John B. Leedom contended that he was duly elected to the office of district justice of the peace for magisterial district 7–2–01 and that he had been wrongfully denied his public office. On April 22, 1977,

1. We hear this case pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 201(3), 17 P. S. § 211.201(3) (Supp.1976). See *Berardocco v. Colden*, 469 Pa. 452–454, n. 1, 366 A.2d 574–75 n. 1 (1976).

this Court issued an order granting the writ of quo warranto and stating that opinions would follow.[2]

## I

The facts are not disputed. In January 1975, the office of district justice of the peace for district 7–3–01 was held by Edward E. Dougherty. His term of office was to expire on January 5, 1976. By order of this Court, dated January 13, 1975, district 7–3–01 was reclassified and redesignated as district 7–2–01, effective January 5, 1976. On February 18, 1975, the election process for the position of district justice for the newly designated district 7–2–01 was initiated by a letter from the Secretary of the Commonwealth to the Bucks County Board of Elections, notifying the Board that the office was to be filled at the November 5, 1975 municipal election and that each eligible political party was to select its nominee at the May 20, 1975 primary election.

On February 26, 1975, respondent William Thomas filed nominating petitions for the office of district justice on both the Democratic and Republican primary ballots. On March 6, 1975, relator Leedom and the incumbent district justice, Edward E. Dougherty, also filed cross-nominating petitions.

On April 23, 1975, Dougherty died. In the primary election of May 20, 1975, Leedom was nominated as the Republican Party candidate and Thomas was nominated as the Democratic Party candidate.

On June 9, 1975, the Governor nominated Thomas to fill the vacancy created by Dougherty's death. The appointment was for a term ending the first Monday of

2. Our order stated: "The writ of quo warranto is granted: respondent is removed from office and relator is declared entitled to the office to which he was elected." Mr. Justice Nix dissented from the order granting the writ.

January 1978.[3]   The Sentate confirmed the nomination on June 17, 1975.   On June 24, 1975, the Senate passed a resolution to recall for further consideration its communication notifying the Governor of the confirmation. The Governor did not issue a commission to Thomas at this time.

By decision of the Bucks County Board of Elections, the office of district justice remained on the ballot in the municipal election.   On November 5, 1975, Leedom was elected for a six year term commencing January 5, 1976. The Board of Elections issued a certificate of election to Leedom on November 24, 1975.   Nevertheless, on December 16, 1975, the Governor issued a commission to Thomas for the office of district justice expiring on the first Monday of January 1978.   Thomas took office on January 5, 1976 pursuant to the commission issued by the Governor.

On January 15, 1977, this Court's decision in *Berardocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976), was published in the Atlantic Reporter advance sheets.   After learning of the decision, Leedom requested his commission for the office of district justice for district 7–2–01 from the Secretary of the Commonwealth.   He also notified the Bucks County Board of Elections that since the office was filled in the 1975 municipal election, it should not appear on the 1977 ballot.

3.   Pa.Const. art. V, § 13(b) provides:
    "A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor.   If the vacancy occurs during the session of the Senate, the appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority.   If the vacancy occurs during sine die adjournment of the Senate such appointment shall not require advice and consent of the Senate.   *The person so appointed shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs.*"   (emphasis added).
    .On May 20, 1975, certain amendments to the Pennsylvania Constitution regarding judicial appointments were adopted.   However, the amendments are not relevant to this case.

## II

Under section 13(a) of article V of the Pennsylvania Constitution, judicial offices are filled by election.[4] Section 13(b) provides that judicial vacancies "shall be filled by appointment by the Governor" and the appointee "shall serve for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs."

In *Berardocco v. Colden*, 469 Pa. 452, 459, 366 A.2d 574, 577 (1976), this Court stated that the appointive process of section 13(b) was intended to fill vacancies "only until the office could again be filled by a popularly elected officer" and "was not intended to frustrate the electoral process." Accordingly, we held that the ten month provision of section 13(b) does not apply when the normal election process for judicial office has commenced through the anticipated expiration of the incumbent's term, even if the vacancy occurs less than ten months prior to the next municipal election. In that event, the appointment may be only for a term equivalent to what would have been the remainder of the previous term. 469 Pa. at 459, 366 A.2d at 577.

This case is controlled by our decision in *Berardocco*. Here, as in *Berardocco*, although the vacancy arose less than ten months before the 1975 municipal election, the normal election process had already been "triggered by the anticipated expiration of the incumbent's term." 469 Pa. at 457, 366 A.2d at 576. Thus, the "ten month" provision of section 13(b) is inapplicable. Thomas' term of office as an appointed district justice of the peace ran only to January 5, 1976, the date

4. Section 13(a) provides:
"Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve."

that the previous incumbent's term expired. Since Leedom was lawfully elected to the office for a six year term commencing January 5, 1976, he was entitled to assume office on that date.

Thomas seeks to distinguish *Berardocco*. He asserts that he ceased campaigning after he was nominated by the Governor to fill the vacancy created by Dougherty's death and, therefore, a "normal election process" did not take place. We reject the contention that our decision in *Berardocco* rested on a finding that the parties had actively campaigned for the disputed office. We stated in *Berardocco* that the "ten month" provision of Pa.Const. art. V, § 13(b) was designed "to insure that the electoral process would be complete with a regularly conducted primary election, as well as a municipal election." 469 Pa. at 459, 366 A.2d at 577 (footnote omitted). In this case, both the primary and municipal elections were duly conducted by the Bucks County Board of Elections. Thomas' personal, strategic decision not to campaign in the municipal election in no way alters the regularity of the election and the applicability of *Berardocco*.

Thomas also raises the defense of laches. This defense bars relief when "the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128, 133, 221 A.2d 123, 126 (1966); accord, *Thompson v. Curwensville Water Co.,* 400 Pa. 380, 162 A.2d 198 (1960); *Commonwealth ex rel. Storb v. Schroll,* 398 Pa. 354, 157 A.2d 179 (1960). A party asserting laches must demonstrate prejudice resulting from the lapse of time. *Kay v. Kay,* 460 Pa. 680, 334 A.2d 585 (1975); *Beaver v. Penntech Paper Co.,* 452 Pa. 542, 307 A.2d 281 (1973); *Young v. Hall,* 421 Pa. 214, 218 A.2d 781 (1966); *Miller v. Hawkins,* 416 Pa. 180, 205 A.2d 429 (1964); *Brodt v. Brown,* 404 Pa. 391, 172 A.2d 152 (1961). The question of laches is factual

and is determined by examining the circumstances of each case. *Siegel v. Engstrom,* 427 Pa. 381, 235 A.2d 365 (1967); *Wilson v. King of Prussia Enterprises, Inc.,* supra; *Mulholland v. Pittsburgh National Bank,* 418 Pa. 96, 209 A.2d 857 (1965).

Thomas argues that Leedom is guilty of laches because Leedom did not institute this action until February 1977. Thomas contends that he has been prejudiced by Leedom's delay in the following ways: (1) he retired from the Pennsylvania State Police prior to the May 1975 primary election in order to run for the office of district justice; (2) he ceased campaigning after the Senate approved his nomination to fill the vacancy; and (3) he has devoted his full time to the responsibilities of his office and has attended courses and done outside reading to improve his skills.[5] We conclude that Thomas has failed to establish that he was prejudiced during a period of inordinate delay.

Thomas resigned from the state police on April 2, 1975, before incumbent Dougherty's death, the 1975 primary election and Thomas' appointment to office by the Governor. Thus, his resignation preceded the material events which gave rise to this dispute and bears no relation to Leedom's delay in bringing suit.

■■ We also conclude that Thomas' decision not to campaign in the municipal election cannot make out a defense of laches. Laches is founded on some change in the condition or relations of the parties which occurs during the period the complainant unreasonably failed to act. 2 J. Pomeroy, Equity Jurisprudence § 419d, at 177 (5th ed.

5. Thomas makes no claim that there has been any prejudice to the citizens who reside in the magisterial district as a result of Leedom's delay in bringing this action. We do not believe that any problems which may arise from Thomas' leaving office— which should be no more than the problems which normally arise when a district justice leaves office—outweigh the public policy in favor of having the citizens served by a constitutionally elected district justice.

202

1941); see *Kay v. Kay*, supra; *Wilson v. King of Prussia Enterprises, Inc.*, supra. It cannot be based on a change of position taking place before the complainant could have and reasonably should have brought suit. Here, it was reasonable for Leedom to wait until after the election to bring an action in quo warranto. Thomas had not yet assumed office. Since the purpose of quo warranto is to try the right of the defendant to presently exercise the office in dispute, *Meyer v. Strouse*, 422 Pa. 136, 221 A.2d 191 (1966), an action at that time would have been premature.[6] Leedom may also have lacked standing to institute an action before he won the municipal election. See generally *Lehman v. Tucker*, 470 Pa. 362, 368 A.2d 670 (1977). Instead of bringing suit, Leedom actively campaigned in the municipal election. This activity put Thomas on notice that Leedom believed himself entitled to the office if he won the election. Thus, during the period before Thomas took office, Leedom asserted his rights in a reasonable manner; Thomas' failure to campaign is not attributable to any lack of diligence on Leedom's part.[7]

Finally, the time and effort expended by Thomas in connection with the exercise of his duties of office do not establish that he was prejudiced by the delay.[8] While these efforts are commendable, we cannot say that

6. We note that in *Berardocco*, where Colden assumed office before the 1975 municipal election and Berardocco immediately instituted an action in quo warranto, we dismissed his complaint at that time without prejudice on the ground it was premature. 469 Pa. at 456, 366 A.2d at 575.

7. Similarly, we reject Thomas' contention that he has been prejudiced because he expended personal funds in pursuit of office. These expenses were incurred before his appointment by the Governor and certainly must have been incurred before the municipal election. Thus, they did not result from unreasonable delay by Leedom.

8. Since we find no prejudice arose from Leedom's delay in bringing suit after Thomas took office, it is unnecessary to determine whether Leedom failed to assert his rights with due diligence.

his attempt to conscientiously carry out his responsibilities constitutes prejudice sufficient to sustain the defense of laches.[9] The time and effort Thomas expended amount to no more than performance of his duties, for which he was fully remunerated [10] and do not constitute a change in position. Nothing else in the record suggests that he suffered a prejudicial change in position during the period he held office.[11]

For the reasons discussed above, Leedom was entitled to the writ of quo warranto issued by this Court on April 22, 1977.

NIX, J., filed a dissenting opinion.

9. Thomas' reliance on *Commonwealth ex rel. Storb v. Schroll,* 398 Pa. 354, 157 A.2d 179 (1960), is misplaced. In *Schroll,* the trial court sustained the defense of laches raised in a quo warranto proceeding against an individual who had been holding the unsalaried position of School director for over two years prior to the suit. On the basis of the pleadings alone, the trial court found prejudice because defendant Schroll "must have" incurred some expenses in office and had contributed his "time, talents and energy" to the job. Id. at 359, 157 A.2d at 181. This Court reversed and remanded, reasoning that the pleadings alone were insufficient to establish the requisite prejudice. We stated the prejudice "should be a matter of proof, not conjecture or surmise." Id. at 360, 157 A.2d at 182. The purpose of the remand was to ascertain the extent of Schroll's efforts in this unsalaried position, whether he incurred any expenses or otherwise changed his position. *Schroll* did not establish that the exercise of official duties of office, by itself, is sufficient to establish prejudice and we decline to do so today.

10. In this action, Leedom sought only a writ of quo warranto. At oral argument before this Court he stated that he would not seek back pay.

11. Thomas asserts he has been prejudiced because: (1) if he is ousted from office he cannot run for district justice until 1981 and (2) since taking office, he has not sought outside employment. We disagree. Thomas' inability to challenge Leedom until 1981 derives from Leedom's lawful term of office, not the delay in bringing suit. Even if this action had been brought earlier, Thomas could not challenge Leedom until 1981. Nor has Thomas demonstrated that his employment opportunities diminished during the period he served as district justice. Thus, he is in no worse a position upon leaving office on the date of our mandate than he would have been had Leedom brought this action earlier.

204

NIX, Justice, dissenting.

I cannot accept the conclusion reached by the majority of the Court that the instant matter is controlled by our prior decision in *Berardocco v. Colden*, 469 Pa. 452, 366 A.2d 574 (1976). In my view, relator John B. Leedom has failed to act expeditiously in instituting this action in quo warranto for his commission as district justice and should be barred from recovery in this belated action by the doctrine of laches.

The pertinent facts of the instant litigation are as follows: Relator and respondent, William Thomas, filed nominating petitions for the primary election of May 20, 1975, for the office of district justice. Edward Dougherty, the incumbent also filed nominating petitions but died on April 23, 1975. In the subsequent primary election both Leedom and Thomas were nominated as the candidates for the municipal election by their respective parties.

On June 9, 1975, respondent was nominated by the Governor to fill the vacancy for the office of district justice for District 7–3–01 which became vacant upon the death of Dougherty. The Senate confirmed the nomination on June 17, 1975.[1] Subsequently, Thomas was sworn into office to serve in the post of district justice until the entry of the order in this case on April 22, 1977. The Bucks County Board of Elections declined to remove the position from the ballot in the November 5, 1975 municipal election and Leedom was elected to that

1. The record also indicates that on June 24, 1975, the Senate passed a resolution to "recall for further consideration its communication notifying the Governor of this confirmation". The parties in their briefs did not discuss the legal efficacy, if any, of this resolution nor has the majority ventured an assessment of the significance of this legislative action. On December 16, 1975, respondent was issued two commissions, one for the original magisterial district (7–3–01) and the second for the newly designated magisterial district (7–2–01). The terms of both commissions issued to Thomas were to extend until the first Monday of January, 1978.

office for a six-year term purportedly to commence January 5, 1976.[2] No action was taken on behalf of relator until February 24, 1977, when this Court was requested to remove Thomas from office and to permit Leedom to serve as district justice until the first Monday of January, 1982.

At first blush, it would appear that *Berardocco v. Colden, supra,* governs the instant matter. There, both relator and respondent were also candidates for the office of district judge. On April 14, 1975, during the course of the primary campaign, the incumbent resigned his commission and the Governor nominated respondent Colden to fill the vacant office for a term ending the first Monday of January, 1978. Following confirmation by the Senate, Colden assumed the office of district justice on June 24, 1975. That same date, Berardocco filed an action in quo warranto seeking to have the appointment declared invalid. We dismissed that complaint without prejudice on the ground that it was premature.

As in the instant matter, relator was elected in the November municipal election to a six-year-term commencing January 5, 1976. When Berardocco failed to receive his commission by that date he *immediately* instituted a second action in quo warranto. Subsequently, this Court held that relator was entitled to his elective office.

Although in some respects similar, I believe the instant action presents separate and distinct considerations

2. Respondent sets forth in his counter-statement of the case that the Bucks County Board of Elections held a hearing in September of 1975 to decide whether or not this office should have been removed from the ballot for the municipal election of November, 1975. Respondent further asserts that he did not receive notice of this hearing and was not aware that it was being held. He did some time thereafter learn of the fact that the hearing had been held and that relator was present. Since these statements were not challenged by relator either by way of a supplemental brief or at argument before this Court, I accept them as true for purposes of this case.

which compel a different conclusion.[3] In contrast to Berardocco's prompt response, relator Leedom procrastinated over one year after his elective term was scheduled to begin before asserting his claim. In my view that delay is fatal to his cause under the doctrine of laches.

As defined by this Court:

Laches is an equitable doctrine, and its purpose is for the repose of title, claims and demands for peace and order in society. See, *St. Peter's Evan. Luth. Ch. v. Kleinfelter*, 96 Pa.Super. 146 (1929). The question of its application does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but rather whether, under the circumstances of the particular case, the complaining party or parties are chargeable with want of due diligence in failing to institute or prosecute the claim : *Lutherland, Inc. v. Dahlen*, 357 Pa. 143, 53 A.2d 143 (1947).

*Gabster v. Mesaros*, 422 Pa. 116, 119–120, 220 A.2d 639, 641 (1966).

See also *Mulholland v. Pittsburgh National Bank*, 405 Pa. 268, 174 A.2d 861 (1961); *Heinly v. Keck*, 192 Pa. Super. 537, 161 A.2d 655 (1960). The uncontradicted facts of this case establish that more than thirteen months elapsed from the date on which Leedom's elected term was to commence until this action was instituted on his behalf. This is so despite Leedom's admission that since the latter part of 1975 he was aware of a similar claim being raised in the *Berardocco* case. Relator asserts that he was awaiting our ruling in that matter before commencing his own suit.[4] I believe it was incum-

---

3. It is clear that when exceptional or unusual circumstances are presented in an action in quo warranto this Court may resolve the matter under its equity powers. See *Chalfin v. Specter*, 426 Pa. 464, 474, 233 A.2d 562, 566 (1967). I believe this case presents such a situation.

4. I do not share the belief that a party who sits idly by to await the outcome of a lawsuit to which he is a stranger, is necessarily

bent upon relator to present his argument to the proper tribunal at the earliest possible time rather than permitting another individual to assume the office without protest, serve in that position for more than a year and then attempt to seek relief under the stale claim.

The majority correctly points out that a party asserting laches must demonstrate prejudice resulting from the lapse of time. My quarrel with the majority's reasoning is that it confines the inquiry to the possible prejudice of respondent and ignores the prejudice to the citizens who reside within this magisterial district. *Cf. Commonwealth ex rel. Storb v. Schroll*, 398 Pa. 354, 157 A.2d 179 (1960). In matters affecting the operations of government the right of the public must transcend the rights of those seeking office. It is a fundamental goal of this Court to obtain an ordered and effective judicial system at every level in this Commonwealth. Today's result needlessly frustrates that end. To now remove the present district justice and permit Leedom to assume the position, totally disrupts the judicial process in the district in question. During the past 13 months respondent has faithfully and effectively discharged the duties of that office. The people of the district have come to know and rely upon him to serve their needs. Undoubtedly, many matters are presently pending before that court, thus the continuity of the work flow will be needlessly disturbed. There will be in all probability, instances where pending matters will be unduly delayed, possibly to the irreparable prejudice of the litigants. While I agree with the rule announced in our decision in *Berardocco*, its application here is unwarranted in view of the gross intrusion upon the orderly administration of

entitled to the benefit of a favorable result particularly where his tardiness in instituting an action on his own behalf has substantially and adversely affected the rights of others. Further, even though it is conceded that relator learned of our decision in *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976) on January 24, 1977, he did not commence this action in quo warranto until an additional 31 days had passed.

justice which will ensue because of relator's lack of due diligence.

I also am not willing to dismiss as cavalierly as the majority has seen fit, the claim that the events which preceded the November, 1976 election in effect deprived a segment of the community of a viable candidate for this office. The majority attempts to discount this claim because respondent was not sworn into office until after the November election of 1976. What the majority ignores is that between the primary election and the general election the Governor had initiated the appointing process which, if legally valid, would have in fact nullified the pending election process. While there was some problem in the confirmation of respondent, *see* note 1, *supra*, no challenge was raised to the power of the Governor to appoint for a two-year term during the period between the primary election and the general election. In such a posture it would not have been unreasonable for a segment of the community who supported respondent's candidacy to have relied on the Governor's power of appointment and to have concluded that the only contingency attached to Thomas' gaining the office for the stated term was an effective Senate confirmation.

In this context it is significant that in *Berardocco* the relator initially instituted his action in the month of June preceding the November election. While it is true that this Court declined to reach the merits of the question until after the election, it was nevertheless important to the decision in that case that all parties were put on notice of a cloud over the validity of such an appointment and, therefore, should have been fully cognizant of the possible significance of the forthcoming election. In contrast, in the instant case, there was no reason for the citizens of this district to have questioned the validity of the appointive process.[5] Under these circumstances it cannot be said that it would have been unreasonable for

5. There was no claim in *Berardocco* that the appointment had caused either of the parties to withdraw from active campaigning.

respondent's supporters to have viewed the elective process as a nullity and to have foregone further participation therein.

I fail to perceive how a court, which has on prior occasions, exhibited serious concern over the possibility that a major political party might be deprived of a candidate for an office in a general election, can here display such an insensitivity to that problem by rendering a decision which creates that result. *Cf. Chalfin v. Specter*, 426 Pa. 464, 233 A.2d 562 (1967). In *Chalfin,* Mr. Specter who was then serving as the elected District Attorney for the City of Philadelphia ran for the Republican nomination for the office of Mayor of that City without first resigning from the office of District Attorney as required by the Philadelphia Home Rule Charter. The decision in that cause was handed down between the primary and the general elections. The members of the Court could not agree upon an opinion but at least four members decided that Mr. Specter as District Attorney was a city officer and thus covered by the provisions of the Charter. Section 10-107(5) of the Charter prohibited in the clearest terms a city officer from being "a candidate for nomination or election to any public office unless he shall have first resigned from his then office . . .". Subsequent provisions of the Charter provided severe penalties against any such officer who violated its terms,[6] including the right to declare the offender disqualified for the office he sought and to remove him from the office he was then holding. This Court declined to impose any sanction against Mr. Specter for this blatant violation. In explaining his reason for not urging the imposition of a sanction, the late Mr. Chief Justice BELL in his concurring opinion in *Chalfin,* posed the following question:

"Under these very unusual facts and circumstances, are the people of Philadelphia to be denied the right to

6.  *See* Sections 10-107(6) and 10-109.

vote for a candidate for Mayor on one of the two major tickets, i. e. the Republican ticket, . . ." *Id.* at 472, 233 A.2d at 566.

At a later point in his opinion he answered this rhetorical question as follows:

"Under these exceptionally unusual circumstances, I believe . . . Specter should be permitted to be a candidate for Mayor of Philadelphia without resigning his office as District Attorney. *To hold otherwise, under all the very unusual facts and circumstances and exigencies hereinabove set forth, would be a gross miscarriage of Justice!"* [7] *Id.* at 477, 233 A.2d at 568. (Emphasis added).

In my judgment the circumstances are more compelling in the case at bar for refusing relief to relator then they were in the *Chalfin* case for declining to take action against Mr. Specter for the breach of the Charter provision.

Moreover, it necessarily follows that if Leedom were entitled to hold the office from January 5, 1976, he is equally entitled to receive the salary from that date. Since the question of back pay is not properly before this Court in an action in quo warranto, *Meyer v. Strouse,* 422 Pa. 136, 221 A.2d 191 (1966), there is nothing to preclude a subsequent demand on the part of relator, and thus the people of this Commonwealth are left exposed to

7. The late Mr. Chief Justice BELL seems to have exaggerated the exigencies of the situation since the Court could have given Mr. Specter the option to resign as District Attorney if he had wished to continue his quest for the office of Mayor or in the alternative have permitted him to retain the office he then held and to have withdrawn from the race for Mayor. *Chalfin v. Specter, supra* at 499, 233 A.2d at 579 (Eagen, J., dissenting opinion). The Election Code provides for the contingency that a candidate who has been nominated for the office may withdraw his candidacy for office in the General Election. Act of August 13, 1963, P.L. 707, § 13, as amended, 25 P.S. § 2938 (Supp.1976–77).

the possibility of being required to pay two men for the services rendered by one.[8]

Finally, the appropriateness of the application of the doctrine of laches under these facts is emphasized by the fact that the appointive term would have expired on the first Monday of January, 1978. The election process for the municipal election to be held in November, 1977 has already begun and both relator and respondent have filed their respective nominating petitions. If the situation had been left undisturbed, the people of the district in question would have had an opportunity to select, in a viable election, their choice to fill the new six-year-term. In my judgment such an approach would have better served the ends of justice.

For the stated reasons, I would deny the Writ.

8. The majority attempts to gloss over this possibility by referring in a footnote to the statement of counsel, during argument, that his client was not interested in seeking back pay. Not only is this dehors the record, there is also no indication that counsel was authorized by his client to make such a representation.