550 A.2d 184

**Richard A. SPRAGUE, in his capacities as attorney at law in the Commonwealth of Pennsylvania, taxpayer in the Commonwealth of Pennsylvania, and citizen of and duly registered voter in the Commonwealth of Pennsylvania, Petitioner,**

v.

**Robert P. CASEY, in his official capacity as Governor of the Commonwealth of Pennsylvania, James J. Haggerty, in his official capacity as Secretary of the Commonwealth of Pennsylvania, William Boehm, in his official capacity as Commissioner of the Bureau of Legislation, Commissions and Elections, Allen Ertel, in his capacity as Democratic Party nominee for the office of Justice of Supreme Court of Pennsylvania, Anita B. Brody, in her capacity as Republican Party nominee for the office of Justice of the Supreme Court of Pennsylvania, Walter M. Cohen, in his capacity as Republican Party nominee for the office of Judge of the Superior Court of Pennsylvania, and Catherine Ford–Elliot, in her capacity as Democratic Party nominee for the office of Judge of the Superior Court of Pennsylvania, Respondents.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1988.

Decided Oct. 25, 1988.

Richard A. Sprague, Geoffrey R. Johnson, Philip I. Weinberg, Philadelphia, for petitioner.

Edward W. Mullinix, James D. Crawford, Schnader, Harrison, Segal & Lewis, Philadelphia, for Anita B. Brody.

Thomas A. Leonard, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, for Allen Ertel.

Neil T. O'Donnell, Philadelphia, for Catherine Ford–Elliot.

Morey M. Myers, Gen. Counsel, Richard D. Spiegelman, Chief Deputy Gen. Counsel, Harrisburg, for Agency Liaison.

Andrew H. Cline, Deputy Gen. Counsel, Harrisburg, for Robert P. Casey, James J. Haggerty and William Boehm.

David Richman, Pepper, Hamilton & Scheetz, Philadelphia, for Walter M. Cohen.

E. Barclay Cale, Jr., Thomas B. Kenworthy, Andrew D. Leipold, Morgan, Lewis & Bockius, Philadelphia, amici curiae for Republican State Committee of Pennsylvania.

Karen M. Balaban, Harrisburg, for Pennsylvania Democratic State Committee.

42

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This lawsuit was instituted by Petitioner, Richard A. Sprague, who filed a Complaint for Declaratory and Injunctive Relief in the Commonwealth Court challenging the placing on the ballot in the November 1988 general election one seat on the Supreme Court and one seat on the Superior Court. Named as respondents in the action were Robert P. Casey, in his official capacity as Governor of the Commonwealth of Pennsylvania; James J. Haggerty, in his official capacity as Secretary of the Commonwealth of Pennsylvania; William Boehm, in his official capacity as Commissioner of the Bureau of Legislation, Commissions and Elections; Allen Ertel, in his capacity as Democratic Party nominee for the office of Justice of the Supreme Court of Pennsylvania; Anita B. Brody, in her capacity as Republican Party nominee for the office of Justice of the Supreme Court of Pennsylvania; Walter M. Cohen, in his capacity as Republican Party nominee for the office of Judge of the Superior Court of Pennsylvania; and, Catherine Ford–Elliot, in her capacity as Democratic Party nominee for the office of Judge of the Superior Court of Pennsylvania. The various respondents filed preliminary objections to the complaint filed by petitioner. Prior to argument in the Commonwealth Court which was scheduled for September 14, 1988, this Court, in response to petitioner's request for the Exercise of Plenary Jurisdiction, entered an order on September 12, 1988, granting the petition for the Exercise of Plenary Jurisdiction, and listed the case for argument during the September argument session in Pittsburgh.[1] After the receipt of briefs and oral argument, this Court entered a *per curiam* order on September 27, 1988, 519 Pa. 313, 548

1. The applications of the Pennsylvania Democratic State Committee and the Republican State Committee of Pennsylvania for status as Amicus Curiae in this action were granted.

A.2d 249, denying respondents' preliminary objections, granting petitioner's application for summary relief and directing the Secretary of the Commonwealth to remove from the ballot in the general election of 1988 the offices of Justice of the Supreme Court and Judge of the Superior Court. We now file this opinion to set forth the reasons for the aforesaid order.

## I.

Before reaching the merits of the instant case we must first address the issues raised by respondents in their preliminary objections. Respondents argue that the petitioner lacks standing to pursue the instant suit because the governmental action challenged does not substantially impact on him in a direct and immediate manner. However, we find that the petitioner has standing to maintain this action because this case falls within the narrow exception recognized by this Court in *Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979).

Generally, in order to have standing, a party must have an interest in the controversy that is distinguishable from the interest shared by other citizens. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). To surpass that common interest, the interest must be substantial, direct and immediate. *Id.* In *Biester*, however, we determined that certain cases warrant the grant of standing to taxpayers where their interest arguably is not substantial, direct and immediate. *Biester*, 487 Pa. at 444, 409 A.2d at 852. In reaching that conclusion, we considered *Faden v. Philadelphia Housing Authority*, 424 Pa. 273, 227 A.2d 619 (1967), where this Court announced that "although many reasons have been advanced for granting standing to taxpayers, the fundamental reason for granting standing is simply that otherwise a large body of governmental activity would be unchallenged in the courts." *Biester*, 487 Pa. at 445, 409 A.2d at 852. Furthermore, we noted that:

44

The ultimate basis for granting standing to taxpayers must be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.... Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.

*Biester, supra,* 487 Pa. at 443 n. 5, 409 A.2d at 851 n. 5. *See also Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986).

Moreover, in *Biester,* we considered that the issue was likely to escape judicial review when those directly and immediately affected by the complained of conduct were beneficially affected as opposed to adversely affected. We also recognized that "consideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or the existence of other persons better situated to assert the claim." *Biester,* 487 Pa. at 446, 409 A.2d at 852. (*Quoting, Government of Guam, ex rel. Camacho v. Bird,* 398 F.2d 314 (9th Cir.1968) (citations omitted)).

In this case, we believe that the special circumstances involved warrant the grant of standing to petitioner under the exception articulated in *Biester.* If standing were not granted to the petitioner, this election would otherwise go unchallenged because respondents are directly and beneficially affected. Judicial relief is appropriate because the determination of the constitutionality of the election is a function of the courts, *cf. Zemprelli v. Daniels,* 496 Pa. 247, 436 A.2d 1165 (1981); *Hertz Drivurself Stations, Inc. v. Siggins,* 359 Pa. 25, 58 A.2d 464 (1948), and redress through other channels is unavailable. Finally, the only persons better situated to maintain this action are the respondents who did not choose to institute legal action.

■ Having determined that petitioner has standing to maintain this action, we now turn to the question of whether the equitable doctrine of laches applies to the instant case. Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. *Wilson v. King of Prussia Enterprises, Inc.*, 422 Pa. 128, 221 A.2d 123 (1966). Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. *Class of 200 Administrative Faculty Members v. Scanlon*, 502 Pa. 275, 466 A.2d 103 (1983); *Leedom v. Thomas*, 473 Pa. 193, 373 A.2d 1329 (1977). Moreover, the question of laches is factual and is determined by examining the circumstances of each case. *Leedom, supra.*

■ Respondents contend that the petitioner unreasonably failed to commence this action for six and one-half months from the time he had actual or constructive notice of his claim. Specifically, respondents allege that petitioner had notice of the scheduled elections from as early as February 2, 1988, when such notice was published in a Philadelphia newspaper. Petitioner argues that although he may have had constructive notice of the elections at that time, he asserts that he was not aware of the constitutional issues surrounding the election until July 1, 1988. The correct inquiry in determining whether his conduct resulted in a want of due diligence is to focus not upon "what the plaintiff knows, 'but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him,' " *Taylor v. Coggins*, 244 Pa. 228, 231, 90 A. 633, 634 (1914) (*quoting Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 167 Pa. 136, 31 A. 484 (1895)). What the law requires of petitioner is to discover those facts which were discoverable through the exercise of reasonable diligence. *Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884 (1952). In the instant case, petitioner had not only to discover the facts surrounding his claim, but

also to ascertain the legal consequences of those facts. It is asserted petitioner, as an attorney, is deemed to be familiar with the mandate of the Constitution of this Commonwealth, and thus should have been immediately aware of his claim. The candidates-respondents, however, are also lawyers and are candidates for offices on the two highest courts in this jurisdiction, and should be charged with the knowledge of the Constitution as well. Respondents are requesting that this Court use its equitable powers to deny petitioner relief; yet, they have made no effort to seek judicial approval of the scheduled election. He who seeks equity must do equity. *Mazer v. Sargent Electric Co.,* 407 Pa. 169, 180 A.2d 63 (1962), *Hartman v. Cohn,* 350 Pa. 41, 38 A.2d 22 (1944). To find that petitioner was not duly diligent in pursuing his claim would require this Court to ignore the fact that respondents failed to ascertain the *same* facts and legal consequences and failed to diligently pursue any possible action. We cannot say that respondents who seek to invoke this equitable defense have acted equitably in this manner. In light of the foregoing, we cannot say that petitioner failed to pursue this matter diligently. Here petitioner used reasonable diligence to discover the facts supporting his claim as soon as he knew a claim existed.

■ With regard to the issue of prejudice caused to respondents as a result of the delay, respondents have failed to meet their burden of proof as well. Respondents claim that they were prejudiced by the delay in that they expended time, money and effort for the scheduled election. What respondents fail to realize, however, is that the sort of prejudice required to raise the defense of laches is some changed condition of the parties which occurs during the period of, and in reliance on, the delay. The prejudice "cannot be based on a change of position taking place before the complainant could have and reasonably should have brought suit." *Leedom v. Thomas, supra,* 473 Pa. at 202, 373 A.2d at 1333 (1977). Undoubtedly respondents here began preparing and spending time and money on their

campaigns as soon as they knew there would be an election. They did not act solely in reliance on petitioner's lack of action.

■ We find the respondents have failed to meet their burden of proof on the defense of laches because they have failed to show a lack of due diligence in the filing of this action and they have failed to demonstrate that the delay prejudiced them in any way. Most importantly, laches and prejudice can never be permitted to amend the Constitution. As noted by this Court in *Wilson et ux. v. Philadelphia School District, et al.,* 328 Pa. 225, 195 A. 90 (1937):

> We have not been able to discover any case which holds that laches will bar an attack upon the constitutionality of a statute as to its future operation, especially where the legislation involves a fundamental question going to the very roots of our representative form of government and concerning one of its highest prerogatives. To so hold would establish a dangerous precedent, the evil effect of which might reach far beyond present expectations. *Id.* at 242, 195 A. at 99.

*See also Commonwealth v. Gilligan,* 195 Pa. 504, 46 A. 124 (1900). As early as 1900 Justice Mitchell explicitly stated that laches would not, *ipso facto,* operate to prevent the court from declaring an act void in violation of the constitution, even if the traditional elements of laches had been established.

> The act has stood on the statute book, without challenge for nearly a quarter of a century, and millions of dollars of school funds have been collected and disbursed under its provisions.... [T]hese are not reasons for refusing to declare it void if in contravention of the constitution,.... *Id.* at 511, 46 A. at 125.

In *Gilligan* the court did not find a constitutional violation. Here, the constitutional violation, as will be discussed *infra,* is patent.

Another preliminary objection, raised by two of the respondents, is that the petitioner failed to join indispensable parties and that such failure precludes this Court from

48

proceeding with the action. The persons alleged by the respondents to be indispensable parties are Justice Juanita Kidd Stout of the Supreme Court and Judge James R. Melinson of the Superior Court, each of whom was appointed by Governor Casey to fill a judicial vacancy. Justice Stout was appointed on February 8, 1988, to fill a vacancy created by the resignation of former Supreme Court Justice William D. Hutchinson. The term of Justice Stout's appointment was commissioned to expire on the first Monday of January, 1989. Judge Melinson was also appointed on February 8, 1988, to fill a vacancy caused by the resignation of former Superior Court Judge Richard B. Wickersham. Judge Melinson's appointment, like that of Justice Stout, was commissioned to expire on the first Monday of January, 1989.

In asserting that Justice Stout and Judge Melinson are indispensable parties, the respondents aver that each of those judicial officers has a direct interest in the outcome of this litigation. In support of that contention, the respondents argue that, should petitioner Sprague prevail, both Justice Stout and Judge Melinson will have their appointive terms extended beyond the expiration date designated by the Governor. Another assertion advanced by one of the respondents is that, if the petitioner prevails in the action, the appointments of Justice Stout and Judge Melinson might have to be nullified as being unconstitutional.

It is true, of course, that unless all indispensable parties are made parties to an action, a court is powerless to grant relief. *E.g., Tigue v. Basalyga,* 451 Pa. 436, 304 A.2d 119 (1973). Thus, the absence of such a party goes absolutely to the court's jurisdiction. *Columbia Gas Transmission Corp. v. Diamond Fuel Co.,* 464 Pa. 377, 346 A.2d 788 (1975); *Pincus v. Mutual Assurance Co.,* 457 Pa. 94, 321 A.2d 906 (1974); *Tigue v. Basalyga, supra.* A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. *Tigue v. Basalyga, supra; Powell v. Shepard,* 381 Pa. 405, 113 A.2d 261 (1955). A

corollary of this principle is that a party against whom no redress is sought need not be joined. *Kern v. Duquesne Brewing Co.*, 396 Pa. 279, 152 A.2d 682 (1959); *In re Culbertson's Estate*, 301 Pa. 438, 152 A. 540 (1930). In this connection, if the merits of a case can be determined without prejudice to the rights of an absent party, the court may proceed. *Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 431 A.2d 953 (1981).

■ Application of the above principles to the instant case makes it abundantly clear that Justice Stout and Judge Melinson are not indispensable parties. It must be kept in mind that the right ostensibly conferred upon each of the appointees, by her or his commission, was a term of office lasting until the first Monday of January, 1989. Each of the appointees accepted a commission with that apparent limitation, and took no steps to challenge the official decision to put those seats on the ballot for the November 1988 general election. The action brought by petitioner Sprague sought no redress against either Justice Stout or Judge Melinson, and in no way sought to diminish the rights they had been given and had accepted. Moreover, the relief sought by the petitioner would expand the terms of their appointments, and thus could not be adverse to their interests. Should the respondents prevail on the merits of this case, Justice Stout and Judge Melinson will have the same rights they had before this suit was commenced—a right of office lasting until the first Monday of January 1989.

The argument that Sprague's position, if it prevails, will invalidate the two judicial appointments, is without merit. If petitioner Sprague is correct on the merits, it will affect only the duration of the appointments, not the validity of the Governor's act of making them. The result will be that the terms of the appointments will have to be amended to reflect the dictates of our state constitution. We therefore concluded that Justice Stout and Judge Melinson were not indispensable parties.

50

## II.

At the heart of this controversy is petitioner's claim that an election to fill the offices of Justice of the Supreme Court and Judge of the Superior Court may not be placed on the ballot during a general election under the Constitution of this Commonwealth. The respondents rely upon this Court's opinion in *Cavanaugh v. Davis*, 497 Pa. 351, 440 A.2d 1380 (1982) (*"Cavanaugh "*), in support of the propriety of conducting the election for these offices during a general election. The vacancy for the seat of Justice of the Supreme Court was occasioned by the resignation of the former Justice Hutchinson which occurred on October 16, 1987. The vacancy on the Superior Court arose when former Judge Wickersham resigned on March 8, 1987.

In an effort to resolve the conflict between Article V, section 13(a),[2] which mandates that all judicial officers of this Commonwealth *"shall be* elected at the municipal election next preceding the commencement of their respective terms ...,"* and Article VII, section 3,[3] which permits the election of statewide judges in general or municipal elec-

**2.** Election of justices, judges and justices of the peace; vacancies
   (a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.
   Pa. Const. art. V, § 13(a).

**3.** Municipal election day; offices to be filled on election days
   All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers, for regular terms of service, shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different day, two-thirds of all the members of each House consenting thereto: Provided, That such elections shall be held in an odd-numbered year: Provided further, That all judges for the courts of the several judicial districts holding office at the present time, whose terms of office may end in an odd-numbered year, shall continue to hold their offices until the first Monday of January in the next succeeding even-numbered year.
   Pa. Const. art. VII, § 3.

tions,[4] as the circumstances may require, the Court in *Cavanaugh* carved an exception to the absolute mandate of Article V, section 13(a). The majority in *Cavanaugh* reasoned as follows:

> Respondent's argument disregards established principles of constitutional construction. Because the language of the two constitutional provisions at issue relates to the same subject matter, the election of judges, the two provisions must be construed together. *See Berardocco v. Colden*, 469 Pa. 452, 459, 366 A.2d 574, 577 (1976); *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976); *Weiss v. Ziegler*, 327 Pa. 100, 104, 193 A. 642, 644 (1937). *See also* Statutory Construction Act of 1972, 1 Pa.C.S. § 1932. Moreover, because the Constitution is an integrated whole, effect must be given to all of its provisions whenever possible. *See Cali v. Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962). *See also* Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a).
>
> When Article VII, § 3, and Article V, § 13, are read in light of these principles, it is clear that the Constitution treats differently two classes of judges, those judges who are chosen by electors of the State at large and those judges who are elected locally. Locally elected judges are to be chosen at municipal elections, which are defined in Article VII, § 3, as elections held in odd-numbered years. No exception to this rule is provided. By contrast, although judges elected state-wide ordinarily are to be chosen at municipal elections, an explicit constitutional exception is provided for election at a general election "as circumstances may require."

*Id.*, 497 Pa. at 354, 440 A.2d at 1381–1382.

If we posit the validity of the above reasoning, its applicability to the instant facts is difficult to ascertain. We are confronted with two vacancies that occurred because the

---

**4.** The term "municipal election" is defined as "[t]he election held on the first Tuesday following the first Monday in November in each *odd-numbered* year. 1 Pa.C.S. § 1991. The general election is the election held "on the Tuesday next following the first Monday of November in each *even-numbered* year." *Id.* (Emphasis added.)

jurists failed to serve their full term of office. In *Cavanaugh*, there was no vacancy occurring during the term of office. Chief Justice O'Brien completed a full twenty-one-year term. The question presented was whether the pertinent constitutional provisions required a hiatus to occur between the end of Justice O'Brien's term in January 1983 and the next scheduled municipal election. The interjection of the *Cavanaugh* issue in the factual matrix now before us can only be accomplished by a strained interpretation of constitutional intent and a disregard of an unambiguous constitutional direction.

### A.

When a question relating to a vacancy occurring during the term of office arises, the constitution is explicit and comprehensive in its direction as to how the transition is to occur. The pertinent portion of Article V, section 13(b), as amended November 6, 1979, for our purposes provides:

**Election of justices, judges and justices of the peace; vacancies**

(b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor. The appointment shall be with the advice and consent of two-thirds of the members elected to the Senate, except in the case of justices of the peace which shall be by a majority. The person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term whichever is less,....

Pa. Const. art. V, § 13(b) (amended November 6, 1979).

This provision does not confer discretion in the Governor as to whether this power of appointment should be used to fill the vacancy or the term for which that appointment should extend. The language of Article V, section 13(b) providing that the vacancy *"shall* be filled by appointment by the Governor"* leaves no discretion in that officer as to how he is to proceed once the vacancy during the term of

office occurs. Similarly, the language directing that "[t]he person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term, whichever is less," is explicit as to when the interim term must end and the succeeding elective term begins. The only discretion left to be exercised by the appointing authority is the designation of the appointee.

Both of the vacancies in this matter occurred by resignation during the term of office. In each instance the first municipal election more than ten months after the vacancy occurred will be the November 1989 municipal election. If the former jurists had served their full terms, the unexpired term in each instance would have extended to or beyond the first Monday in January 1990.[5] Thus Article V, section 13(b) mandates that the new terms of office must commence in January 1990. The election to designate a jurist to fill that term must be conducted in the municipal election to be held in 1989, and the new term must commence on the first Monday of January 1990. Our decision in *Cavanaugh* is clearly not applicable to the instant situation, nor could it have legitimately been perceived to apply in this situation. As noted by this Court in *Miller v. City of Beaver Falls*, 368 Pa. 189, 192, 82 A.2d 34, 36 (1951):

[A]ll acts of the legislature and of any governmental agency are subordinate to the Constitution, which is the Supreme Law of the land; and therefore no matter how desirable the act may appear or how worthy the objective,

5. The regular term of Justice Hutchinson would have expired on the first Monday in January 1992. The unexpired term of Judge Wickersham would have ended on the first Monday in January 1990. If the former jurists had served their full terms, the elections to fill those positions would have been in the municipal elections of 1991 and 1989 respectively. The unexpired term of Judge Wickersham coincides with the alternative provision provided for in Article V, section 13(b). The unexpired term of Justice Hutchinson extends beyond the period prescribed within that section of the constitution. Thus, in both cases it is mandated that the new term commence on the first Monday in January 1990 with the election filling that office occurring in the November 1989 municipal election.

it cannot be sustained if it is interdicted by the Constitution.

In the instant case the vacancies, having occurred during the term of office, were required to be filled by gubernatorial appointment exercised in accordance with section 13(b) of Article V. That provision properly applied in this case would have created two new judicial terms commencing the first Monday of January 1990. Therefore the terms of ten years commencing in an even year would thereafter expire in an even year. Thus the concern of *Cavanaugh* is not legitimately present. What injected this question into this scenario was the attempt to exercise the gubernatorial appointment in a manner contrary to the mandate of section 13(b). Both appointees were given commissions for their appointed terms indicating an expiration on the first Monday of January 1989.[6]

Since the actions of the appointing authority were not in conformity with the constitutional provision conferring that power, they may not be permitted to stand. As previously noted, the only discretion in the exercising of the power of appointment to fill a vacancy that occurs during the term is the designation of the appointee. The lengths of that interim appointed term and the date of its expiration is prescribed explicitly by the constitutional provision and that mandate cannot be avoided. The terms, in this instance, for the interim appointees must by operation of law run to the first Monday of January 1990.[7]

6. The Secretary of the Commonwealth initiated the election process to fill these vacancies in the general election of November 1988 by notifying each county Board of Elections of his certification that the offices of Justice of the Supreme Court and Judge of the Superior Court "as two of those offices to which a candidate will be elected at the general election on November 8, 1988." This notification was given to the county Board of Elections prior to January 15, 1988, pursuant to section 905 of the Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2865 (1988 Supp.).

7. If some impediment arises during the appointed term that would prevent the appointee from completing that term, it is to be noted that the balance of the interim term must remain vacant until the new term commences. Article V, section 13(c) provides:

The resignations during the respective term in this matter did not create a *Cavanaugh* issue. That situation only arose because of the failure of the appointing authority to exercise the power of appointment in accordance with *clear* constitutional mandate. To permit the remedy provided in *Cavanaugh* to apply here would legitimize a clear violation of section 13(b) of Article V, which violation in fact created the problem in the first instance. Such a result would be obviously jurisprudentially unsound and cannot be countenanced.[8]

We were fully aware of the unsettling impact of our September 27, 1988, order, but we were nevertheless constrained to insist that an unambiguous constitutional direction may not be ignored. The directions of Article V, section 13(b), are clear and precise.[9] Equally clear is that

> In the case of a vacancy occurring at the expiration of an appointive term under section thirteen (b), the vacancy shall be filled by election as provided in section thirteen (a).

8. The Secretary of the Commonwealth is directed to amend the term of office in the commissions of the two appointed jurists consistent with this opinion.

9. In *Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976), we were called upon to examine an earlier version of Article V, section 13(b). Under that version, the length of the appointed term was defined as being as follows:

> (b) A vacancy in the office of justice, judge or justice of the peace shall be filled by appointment by the Governor.... The person so appointed shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs....

The present alternative "or for the remainder of the unexpired term, whichever is less," was not present in that version of the section. Thus the question arose as to whether the ten-month provision of section 13(b) would extend the appointed term beyond the time that the vacant term would have expired. In *Berardocco* an action in *quo warranto* was entertained by this Court in its original jurisdiction pursuant to section 201(3) of the Appellate Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.201(3), now 42 Pa.C.S. § 721(3), to determine whether the relator, who had been elected during the municipal election to fill the seat, was entitled to hold the office which was then being occupied by the appointee under Article V, section 13(b). It was in this context that the court relied upon the constitutional preference for an elected judge over an appointed judge to remedy the unprovided for circumstance in the earlier version. That omission has been rectified in the present version and there is no

the procedure sought to be followed in the instant case did not conform to that constitutional mandate, and the consequences of ignoring or condoning that deviation would be unacceptable.[10]  The instant dilemma is further compounded because it is evident in this record that the administration did not deliberately intend to violate section 13(b), but may have been misled by prior precedent in this area.  The irony of the situation is best illustrated in that the respondents who support the errant governmental action in this case rely on those cases articulating the constitutional preference of an elected jurist over an appointed judge.  The context in which that premise was developed occurred in situations where the appointing authority attempted to extend the power of appointment to the detriment of the right of the public to elect judges.  *See, e.g., Berardocco v. Colden,* 469 Pa. 452, 366 A.2d 574 (1976).  Here the administration attempted to curtail the appointing authority in favor of the elected judge, evidencing their good faith and

further need to engage in judicial construction under this specific provision.  The language is clear and unambiguous, and all contingencies can be made to fall within the express terms of this provision.  Thus there is no further justification for proceeding in a manner that is not expressly provided for by the provision.

Even where the term was scheduled to end within "ten months after the vacancy", the traditional election process was not triggered because it was anticipated that the new term would be filled by a retention election.  The provisions of Article V, section 13(b), can be satisfied without distortion of the plain language.  In such a situation the former encumbent would be deemed to have been the nominee elected by both political parties and the parties can fill that position on the ballot in the municipal election under the provisions for substituted nominees provided for in the Election Code.  25 P.S. §§ 2882, 2939, 2941.  Such a situation arose with the untimely death of Judge Thomas Harper, Court of Common Pleas of Allegheny County, who died on June 24, 1983.  His name was to have appeared on the ballot for the municipal election to be held in November of 1983.  In that case both political parties were permitted to name a candidate to run for that office during the municipal election of that year.

10.  As will be discussed *infra,* if we had permitted this situation to continue, we would have created and perpetuated the problem presented in *Cavanaugh.*  The result would have been two additional seats which would end in odd numbered years and would require the election for the new term to occur during a general election.

also rendering inapplicable in this instance the authority of those cases which condemn the *undue* expansion of the appointive power provided under section 13(b) of Article V. It is equally evident that the breadth of our *Cavanaugh* decision has been misperceived and that its *sui generis* quality was not clearly conveyed. We are also constrained to acknowledge that the *Cavanaugh* holding failed to eliminate the evil it was designed to address and, if left standing, would perpetuate the problem. While we appreciate the disappointment of those candidates who successfully obtained nomination of their respective parties and their respective supporters, we cannot permit this concern to cloud our clear responsibility.

## B.

It is evident that we are compelled to comment upon the continuing vitality of our decision in *Cavanaugh*. The *sui generis* quality of the issue presented in *Cavanaugh* should have been readily apparent. The problem arose because the office of Justice of the Supreme Court was formerly assigned a term of twenty-one years. Where a term of office is assigned an odd number, if it commences in an even-numbered year, it will expire in an odd-numbered year. Conversely, if that odd-numbered term began in an odd-numbered year, it would expire in an even-numbered year and would continue to alternate in this manner into infinity. In contrast, where the term commencing in an even-numbered year is for an even number of years, it will always expire in an even-numbered year and the election to fill the new term can properly be held in the preceding municipal election. After the adoption of the present Article I in 1968, all judicial terms of office were assigned an even number and the former twenty-one-year term was abolished. At the time that the *Cavanaugh* issue was presented to this Court, there were only two twenty-one-year terms yet to expire. One was the seat of the then Chief Justice O'Brien which was to expire in January of 1983 and the seat of the late Chief Justice Roberts which was to expire in 1984. The

Roberts seat did not present the problem because it expired in an even-numbered year and would be succeeded by a ten-year (even numbered) term. Thus, the *Cavanaugh* court was not presented with a precedent setting issue but merely the adjustment of one term of office so that it would fall within the scheme clearly mandated under Article V.

The strong policy reasons that gave rise to the constitutional mandate that judicial elections should be held in municipal elections applies statewide as well as to the judges of the "several judicial districts." Pa. Const. art. VII, § 3. In general elections the citizens of this Commonwealth are called upon to elect either a President or a Governor. Because of the importance of selecting good judges, it was concluded that the election of judges in an election where either a President or Governor was being elected would detract from the public attention required for the filling of the judicial office. Even the detractors of the popular selection of judges must concede the wisdom of this policy as long as we retain elected judges. Although they may challenge the efficacy of electing judges, they cannot legitimately dispute that a presidential or gubernatorial race distracts the voters in their selection of judicial officers. Thus the exception provided in Article VII, section 3 lost its viability with the adoption of Article V in 1968. Rather than attempting to perpetuate the issue, the *Cavanaugh* Court could have employed the vehicle provided for in Article VII, section 3 by holding that the term of Chief Justice O'Brien could have been extended to the "next succeeding even-numbered year." Pa. Const. art. VII, § 3. Notwithstanding the language of the majority opinion in *Cavanaugh,* its *sui generis* quality must be recognized and therefore that decision provides no authority beyond the holding in that specific case. Henceforth, all judicial elections shall be held during the municipal election as prescribed by Article V, section 13(b), of our Constitution.

For the foregoing reasons this Court entered its order September 27, 1988.

The petitions for reargument filed in this matter are denied.

STOUT, J., did not participate in the consideration or decision of this case.