**NEWCRETE PRODUCTS d/b/a Newcrete Pre–Cast Solutions, a division of New Enterprise Stone & Lime Co., Inc., Appellant**

v.

**The CITY OF WILKES–BARRE.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2011.

Decided Feb. 2, 2012.

As Amended Feb. 24, 2012.

Bruce W. Ficken, Philadelphia, for appellant.

John C. Aciukewicz, Kingston, for appellee.

BEFORE: PELLEGRINI, Judge [1], and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this appeal, we are asked whether the doctrines of piercing the corporate veil and equitable subrogation are available avenues of relief where a municipality allegedly influences its redevelopment authority to perpetrate inequity against a vendor. Specifically, Newcrete Products (Newcrete) appeals an order of the Luzerne County Court of Common Pleas (trial court) that sustained the City of Wilkes–Barre's (City) preliminary objections in the nature of a demurrer. Newcrete contends the equitable doctrines, which typically apply to private business corporations, are applicable to the relationship created pursuant to the Urban Redevelopment Law (Law) [2] between a city and its redevelopment authority. Upon review, we affirm.

### *I. Background*

In 2001, City desired to start a building project (Project) in its downtown area. The Project consisted of a theater and parking garage. During all relevant times the City of Wilkes–Barre Redevelopment Authority (Authority) existed for the redevelopment of City consistent with the Law. Therefore, City pursued the Project with Authority's cooperation.

From the outset of the Project, Authority was financially distressed. As a result, City signed a guarantee and surety agreement on Authority's outstanding line of credit of approximately $1,500,000.00, and transferred additional funds of $150,000.00 to Authority. In part the purpose of the payment and surety agreement was to allow for Authority to purchase the property necessary for the Project. In addition to City's contributions, the Pennsylvania Of-

1. This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

2. Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§ 1701–1747.

fice of the Budget (Commonwealth) also committed funds. However, the Commonwealth's financial commitment was subject to its approval of City's Redevelopment Assistance Capital Program application (Application).

Thereafter, in October 2001, Authority awarded Newcrete the contract (Contract) for the supply of the pre-cast concrete required for the Project's parking garage. However, three months into the Contract, Authority issued Newcrete a stop work order. Authority issued the order in response to the trial court granting a neighboring property owner an injunction prohibiting any further construction. Specifically, the trial court issued the injunction because of an ongoing boundary dispute. Nonetheless, at that time, Authority and City advised Newcrete that the dispute would quickly settle and that work would promptly restart.

During the work stoppage, City continued its efforts to procure funding for the Project. Additionally, City continued to provide funds to Authority to pay its various debts. However, in August 2002, the Commonwealth rejected City's Application, and thereby denied funding. Specifically, the Commonwealth cited the following as reasons for denial: City's tenuous financial situation; the Project's uncertain legal status caused by the injunction; and, its ongoing investigation into City's administration of several other building projects. Authority never lifted the stop work order, and the Project permanently halted. Consequently, Newcrete submitted invoices for its work to Authority, which Authority did not pay.

In November 2002, as a result of Authority's nonpayment, Newcrete filed a demand for arbitration. After settlement negotiations finally broke down in February 2006, an arbitrator awarded Newcrete $4,278,614.04 in damages. Subsequently, the trial court confirmed the award and granted Newcrete interest and court costs.

Notably, three months prior to the trial court's confirmation of the arbitrator's award, City entered a judgment by confession against Authority in the amount of $4,370,112.00. The judgment by confession was entered pursuant to a promissory note made as security for City's past and future payments to Authority.

Believing Authority may be judgment-proof, Newcrete filed this declaratory judgment action against City.[3] By this action Newcrete sought to hold City liable for Authority's debts under the equitable theory of piercing the corporate veil. Alternatively, Newcrete argued that City's judgment against Authority should be subordinated to its arbitration judgment through the court's equitable authority.

In response, City filed preliminary objections in the nature of a demurrer. City argued: 1) Newcrete failed to join an indispensable party, Authority, as a defendant; 2) the doctrine of piercing the corporate veil did not apply because City and Authority are separate entities under Section 4 of the Law; and, 3) Pennsylvania does not recognize the doctrine of equitable subordination in this context.

The trial court determined that based on Section 4 of the Law, City and Authority are defined as separate entities and neither could be considered an instrumentality of the other. Therefore, the trial court held that Newcrete could not seek relief based on piercing the corporate veil because the remedy was foreclosed by the

3. At the time Newcrete filed suit, both Newcrete and City were attempting to satisfy their respective judgments against Authority. In addition to this suit against City, Newcrete also filed a mandamus suit to compel judgment against Authority.

legislature. Additionally, the trial court concluded the doctrine of equitable subordination was inapplicable. In reaching its determination on whether Newcrete stated a legally cognizable claim, the trial court did not address whether Newcrete failed to join an indispensable party.[4] Newcrete appeals to this Court.[5]

### *II. Issues*

Newcrete contends it raised cognizable claims in its complaint, and therefore, the trial court erred in sustaining City's preliminary objections. Specifically, Newcrete asserts City may be liable for Authority's debts to Newcrete through the doctrine of piercing the corporate veil, because City operated Authority with near absolute control as its alter ego. Furthermore, Newcrete argues City improperly used Authority to carry out the Project while shielding itself from risk and liability with the knowledge that Authority was undercapitalized and existed solely as a result of City's funding. Therefore, Newcrete claims it would be inequitable to permit City to protect its assets behind the statutory veil otherwise insulating City from Authority's liabilities.

Alternatively, Newcrete argues City's claim against Authority should be subordinated to Newcrete's claim as a result of City's pervasive and unjust behavior toward Authority. Specifically, Newcrete argues that City and Authority voluntarily entered a judgment prior to the trial court confirming Newcrete's arbitration award, for the sole purpose of insulating City's investment from Newcrete's claim. Newcrete therefore contends this Court should reorder the priority of the judgments consistent with the doctrine of equitable subordination.

### *III. Discussion*

#### *A. The Urban Redevelopment Law*

In 1945, the General Assembly determined that the areas in some communities had become so blighted that they could not be adequately remedied by regulation or private enterprise. Section 2 of the Law, 35 P.S. § 1702; *Greer v. Metro. Hosp.*, 235 Pa.Super. 266, 341 A.2d 520 (1975). Therefore, the General Assembly author-

4. While neither party addresses whether the trial court erred in not considering the indispensable party issue, it remains a threshold issue relating to jurisdiction. *See City of Phila. v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003). When seeking declaratory judgment, a petitioner must make all parties having an affected interest parties to the action. *Id.* A party is indispensable when his rights are so connected to a claim that no order can be issued that does not impair those rights. *Sprague v. Casey*, 520 Pa. 38, 550 A.2d 184 (1988).

Here, although an alter ego corporation may be an indispensable party, Authority is not an indispensable party. This is because its liability arising from the current dispute was set by the trial court's prior orders. Therefore, no judgment between City and Newcrete will prejudice Authority. *See City of Phila. v. Commonwealth*, 575 Pa. 542, 572, 838 A.2d 566, 584 (2003) ("the guiding inquiry ... of indispensability is whether justice can be done in the absence of the parties asserted to be necessary. Such an inquiry entails an assessment of the particular facts and circumstances presented in each case."). In short, Authority's rights will be the same no matter which of several judgment creditors is paid first. Therefore, the trial court did not err in asserting jurisdiction without joining Authority.

5. In reviewing a trial court's grant of preliminary objections, our standard of review is *de novo* and our scope of review is plenary. *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 961 A.2d 96 (2008). Therefore, pursuant to our standard of review, this Court must accept all well-pled material facts in petitioner's pleadings and all interferences reasonably deducted therefrom as true upon its review of an order sustaining a defendant's preliminary objections. *Connor v. Archdiocese of Phila.*, 601 Pa. 577, 975 A.2d 1084 (2009).

ized the creation of redevelopment authorities to reduce blight "in conformity with the comprehensive general plans of their respective municipalities." 35 P.S. § 1702; *Schenck v. City of Pitts.*, 364 Pa. 31, 70 A.2d 612 (1950).

Under the Law's framework it is essential that redevelopment authorities and municipalities are able to extensively cooperate with one another. Section 10 of the Law, 35 P.S. § 1710. *See Belovsky v. Redevelopment Auth.*, 357 Pa. 329, 54 A.2d 277 (1947). Nonetheless, despite a redevelopment authority and its municipality's collaborative existence, each is a separate and distinct entity, and neither is to become the agent of the other. Section 4 of the Law, 35 P.S. § 1704; *Herriman v. Carducci*, 475 Pa. 359, 380 A.2d 761 (1977) (appointing members to a redevelopment authority is a mayor's duty under the Law and not an internal decision of the municipality).

Furthermore, the General Assembly established how redevelopment authorities are to fund construction projects. Pursuant to the Law, redevelopment authorities are not authorized to issue equity (stock) or privatize their ownership. Rather, to obtain funding, redevelopment authorities are limited to issuing bonds. Section 13 of the Law, 35 P.S. § 1713. Such bonds may be secured by the redevelopment authority's revenues, by grants and contributions of federal and state government, or by mortgages on the redevelopment authority's property. *Id.* To that end, redevelopment authorities are instructed and expected to do all things necessary to secure financial aid and cooperation from federal and state government. Section 18 of the Law, 35 P.S. § 1718. Moreover, the municipality may appropriate to its redevelopment authority the funds necessary for it to begin and maintain operations. Act of May 24, 1945, P.L. 982, *as amended,* 35 P.S. § 1746.

Accordingly, with this understanding of the purpose and design of redevelopment authorities, and the General Assembly's intent that municipalities cooperate and fund redevelopment authorities, we consider Newcrete's contentions.

***B. Piercing the Corporate Veil***

■■ Piercing the corporate veil is an extraordinary remedy reserved for cases involving exceptional circumstances. *Lumax Indus., Inc. v. Aultman,* 543 Pa. 38, 669 A.2d 893 (1995); *Vill. at Camelback Prop. Owners Ass'n Inc. v. Carr,* 371 Pa.Super. 452, 538 A.2d 528 (1988). There is a strong presumption against piercing the corporate veil, and the independence of separate corporate entities is presumed. *Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc.,* 468 Pa. 103, 360 A.2d 200 (1976) (a corporation must be presumed as an independent entity even if it is owned solely by one person); *Wedner v. Unemployment Comp. Bd. of Review,* 449 Pa. 460, 296 A.2d 792 (1972).

■ The purpose of the doctrine of piercing the corporate veil is to assess liability for the acts of a corporation to the equity holders in the corporation by removing the statutory protection otherwise insulating a shareholder from liability. *See Mosaica Educ., Inc. v. Pa. Prevailing Wage Appeals Bd.,* 925 A.2d 176 (Pa. Cmwlth.2007). Where a corporation operates as a mere façade for the operations of a dominant shareholder, the dominating shareholder may be held liable for the corporation's inequitable conduct perpetrated through the use of the corporate form's protections. *Carpenters Health and Welfare Fund v. Ambrose,* 727 F.2d 279 (3d Cir.1983).

While there is no bright-line test for when to pierce the corporate veil, courts

established the following list of factors for consideration: "[1] [u]ndercapitalization, [2] failure to adhere to the corporate formalities, [3] substantial intermingling of corporate and personal affairs and [4] use of the corporate form to perpetrate a fraud." *Lumax Indus., Inc.*, 543 Pa. at 42, 669 A.2d at 895 (citing *Dep't of Envtl. Res. v. Peggs Run Coal Co.*, 55 Pa.Cmwlth. 312, 423 A.2d 765, 768–69 (1980)).

Here, Newcrete contends based on City's near total control over Authority and the entities' inequitable conduct to prevent Newcrete from obtaining recovery against Authority, the statutory wall between City and Authority should be disregarded. Therefore, Newcrete asks that City be held liable for Authority's debts.

To the contrary, City contends, relying on the language of Section 4 of the Law, the doctrine of piercing the corporate veil does not apply in this scenario. Specifically, City asserts the Law prohibits a city and an authority from being instrumentalities of one another, and thereby, forecloses the application of piercing the corporate veil. To that end, Section 4 of the Law states:

> Formation of Authorities
>
> (a) There are hereby *created separate and distinct bodies corporate and politic,* one for each city and one for each county of the Commonwealth, as herein defined. Each such body shall be known as the Redevelopment Authority of the city or the county, as the case may be, but *shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function....*

35 P.S. § 1704(a) (emphasis added).

Upon review, the trial court's rationale and City's parallel argument are not persuasive. As argued by Newcrete, all private corporations are presumed and considered independent, yet the doctrine of piercing the corporate veil may still apply to them where they, in fact, do not operate independently. *See Kaites v. Dep't of Envtl. Res.*, 108 Pa.Cmwlth. 267, 529 A.2d 1148, 1150–51 (1987) (citing *Coll. Watercolor Grp., Inc.; Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967) ("[A] court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.")). In the absence of more specific statutory language, the legislature did not restrict a court's equitable authority to pierce the corporate veil where the entities are, in fact, not operating independently.

Furthermore, City's reliance on *Herriman* for the proposition that a city is shielded from its redevelopment authorities' liability under the Law is misplaced. Our Supreme Court in *Herriman* did not define a shield from liability for either a city or its redevelopment authority, but rather, only confirmed the entities' statutory duty to remain separate and distinct. Therefore, neither Section 4 of the Law nor *Herriman* expressly prohibits piercing the corporate veil between City and Authority.

Nevertheless, after further analysis it is evident the doctrine of piercing the corporate veil is wholly inapplicable to the relationship between redevelopment authorities and municipalities. As stated above, piercing the corporate veil exists as a remedy to set aside the statutory shield that protects the equity holders (owners) of a corporation from liability. *Lumax Indus., Inc.; Vill. at Camelback Prop. Owners Ass'n Inc.; Mosaica Educ., Inc.* Accordingly, because a redevelopment authority is not authorized to sell ownership interests, City is not capable of being an equity interest holder in Authority, and

thus, City cannot be liable for Authority's debts by veil piercing.

Although no Pennsylvania precedent addresses this reasoning, the Sixth Circuit thoroughly considered the related arguments. In *Foster Wheeler Energy Corporation v. Metropolitan Knox Solid Waste Authority,* 970 F.2d 199 (6th Cir.1992), a city and county jointly created the Metropolitan Knoxville Solid Waste Authority (KWA) as a non-equity member, non-profit corporation. After formation, KWA independently entered into several construction contracts. Thereafter, KWA accumulated a substantial debt, the city withdrew its financial support, and its building project stalled. As a result of limited financing, KWA breached its contract with the plaintiff contractor. The plaintiff then sued the city and county, who were not parties to the construction contract, on the theory that they dominated and controlled KWA, and that it was necessary to pierce the corporate veil to reach them as the true wrongdoers.

In considering whether the doctrine of piercing the corporate veil was applicable, the Sixth Circuit found no support to either apply or not apply the doctrine in this context. Therefore, it considered the purpose behind the doctrine to determine its applicability.

At the outset, the Sixth Circuit observed it could properly disregard the independent nature of an entity where the corporation operated merely as a sham or instrumentality for the self-interests of its owners. However, in their case, the city and county were not equity owners in KWA. Therefore, as outside third parties, the trial court could not be hold them liable under a theory of piercing the corporate veil.

In sum, the Sixth Circuit held, "despite the city and county placing directors on the [KWA]'s board, and agree[ing] to cooperate and use their best efforts to make the [KWA] succeed ... [there is not] a sufficient nexus between the city, the county and the [KWA] on which to predicate liability." *Foster Wheeler,* 970 F.2d at 203. Thus, the Sixth Circuit held that piercing the corporate veil did not apply even where a municipally has pervasive influence over an entity, if the municipality does not hold an ownership interest in the entity.

The reasoning in *Foster Wheeler* is consistent with Pennsylvania law. To this point, it is established that "[p]iercing the corporate veil is a means of assessing liability for the acts of a corporation against an *equity holder* in the corporation." *Mosaica Educ., Inc.,* 925 A.2d at 184 (emphasis added); *The Vill. at Camelback Prop Owners Ass'n, Inc.,* 538 A.2d at 533 (emphasis added). Moreover, when examining the statutory scheme established by the Law, it is evident City cannot be an equity interest holder in Authority. Rather, Authority is required to be funded through debt (bonds), not through the offering of equity (stock). Sections 14, 15 and 18 of the Law, 35 P.S. §§ 1714–15, 1718. Piercing the corporate veil is inapplicable in this context. Regardless of how controlling City may have been in its cooperative relationship with Authority, City does not have an ownership interest in Authority that can be reached by piercing the corporate veil.

Accordingly, the doctrine of piercing the corporate veil is inapplicable under the statutory framework of the Law and this Court's equitable principles. Therefore, the trial court did not err in sustaining City's preliminary objection in the nature of a demurrer to Newcrete's piercing the corporate veil request.

### *C. Equitable Subrogation*

In the alternative, Newcrete contends City's judgment, resulting from the

Authority's confession of its debts, should be subordinated to Newcrete's arbitration judgment, because City acted inequitably in obtaining a priority position over Newcrete. Newcrete argues reordering liens based on equitable principles is consistent with Pennsylvania precedent and should be used here.

The doctrine of equitable subordination exists in two primary contexts. First, federal bankruptcy courts apply the doctrine to equitably reorder creditors' liens before distribution. *Schubert v. Lucent Tech., Inc.,* 554 F.3d 382 (3d Cir.2009). This doctrine is applied to remedy the inequity caused when a company insider obtains a priority position in bankruptcy over outside creditors through inequitable conduct. *Id.* (citing *U.S. v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996)). Where this scenario occurs and relief is warranted, a court will place the insider at the end of the line and allow outside creditors to receive their distributions first. *Id.*

In Pennsylvania, the use of the doctrine of equitable subordination has not been applied outside of the federal bankruptcy proceedings. *See In Re Winstar Commc'ns, Inc.,* 554 F.3d 382 (3d Cir. 2009). In the absence of authority to adopt the doctrine in this context, we decline to do so.

However, Pennsylvania courts have applied a doctrine termed equitable subrogation in a different context involving liens. Specifically, Pennsylvania's doctrine allows a party who satisfies an encumbrance to assume the same priority position as the holder of the prior encumbrance. *First Commonwealth Bank v. Heller,* 863 A.2d 1153 (Pa.Super.2004); *Indymac Bank v. Arczip, Inc.,* 2006 WL 3460033 (C.P. Phila., No. 00124, filed Nov. 28, 2006). This procedure, which has also been described as equitable subordination, is far different than the doctrine applied by bankruptcy courts, and it is far different from the relief Newcrete seeks here. *See Indymac Bank.*

For the foregoing reasons, we discern no error in the trial court's ruling on the equitable subrogation issue.

### *IV. Conclusion*

Upon review, the trial court did not err in sustaining City's preliminary objections in the nature of a demurrer as Newcrete failed to state a cause of action upon which relief can be granted. Specifically, Newcrete cannot seek relief pursuant to the doctrine of piercing the corporate veil because City is a creditor, not an owner, of Authority. Moreover, Newcrete cannot seek declaratory judgment against City to reorder the priority of Authority's judgments under the doctrine of equitable subrogation. Therefore, as Newcrete's contentions are without merit, the trial court did not err.

Accordingly, we affirm.

### *ORDER*

**AND NOW,** this 2nd day of February, 2012, the order of the Court of Common Pleas of Luzerne County is **AFFIRMED.**