J-A02019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WILLIAM AARON BRODSKY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MJC INDUSTRIES, INC. | |
| Appellant | No. 760 EDA 2014 |

Appeal from the Judgment Entered on February 20, 2014
In the Court of Common Pleas of Bucks County
Civil Division at No.: 2013-03355

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                     **FILED MAY 18, 2015**

MJC Industries, Inc. ("MJC"), appeals the trial court's order granting partial summary judgment to William Brodsky in his suit seeking damages and/or injunctive relief under the Uniform Fraudulent Transfer Act, 12 Pa.C.S. §§ 5101, *et seq.* (hereinafter "the FTA" or "the Act").  Because we find that the order that MJC seeks to appeal was not a final order as defined under Pa.R.A.P. 341, we quash the appeal for want of jurisdiction and remand.  On remand, we also direct the trial court to rule upon the merits of MJC's motion to dismiss to the extent that it raises non-waivable jurisdictional questions.

The trial court has provided the following factual and procedural history of this case:

> In 2001, [Brodsky] was approximately twelve (12) years old when he met Michael Mesko.  Sometime thereafter, Mesko

became sexually involved with [Brodsky. Brodsky] eventually reported these incidents[,] leading to Mesko's arrest by the Allentown Police Department in February 2010. Mesko was charged with involuntary deviate sexual intercourse pursuant to 18 Pa.C.S. § 3123. On October 13, 2010, Mesko [pleaded] guilty to this charge and was sentenced to 5-15 years of incarceration.

Prior to his incarceration, Mesko owned and operated a landscaping business, Mesko Landscaping, Inc., which used for its operations certain real estate owned by Mesko personally. On October 12, 2010, the day before Mesko's guilty plea, he signed a deed transferring his fee simple ownership of real property located at 3268 Route 212, Springtown, PA[,] 18081 (hereinafter "the Route 212 property") to [MJC] in exchange for $1.00. In addition, on the same date, Mesko signed a deed transferring his ownership of approximately 36 acres of real estate located at 1515 Woodcock Road, Kintnersville, PA[,] 18930 (hereinafter "the Woodcock Road property") to [MJC] in exchange for $1.00. Mesko also transferred stock in Mesko Landscaping, Inc. to Glenn Jackson, CEO of [MJC]. Other than the assets transferred, Mesko only retained a cabin in the Poconos, which he valued between $25,000 and $40,000. This cabin was subsequently sold at sheriff's sale because Mesko was unable to pay the real estate taxes thereon. Mesko admitted that he did not retain any other valuable assets. The 1515 Woodcock Road property was unencumbered by any mortgage, tax lien or other liability at the time of transfer. Both Mesko and Jackson admitted that they believed the value of this property was approximately $200,000. Brodsky's appraiser valued the property to be $250,000 in October 2010. The [Route 212 property] was encumbered by a $200,000 line of credit. [Brodsky's] appraiser valued this property to be $265,000 in October 2010.

On April 1, 2011, [Brodsky] filed a civil suit against Mesko in the Lehigh County Court of Common Pleas, . . . which resulted in a stipulated judgment against Mesko in the principal amount of $500,000.00. . . .

On May 13, 2013, [Brodsky] filed the instant action in order to collect upon said judgment. At the time this suit was brought, [Brodsky] had not collected any sum toward[] the $500,000 judgment. On June 26, 2013, [MJC] filed an [a]nswer to [Brodsky's complaint]. Thereafter, the parties engaged in

discovery, and various motions and responses were filed by the parties. On December 26, 2013, [Brodsky] filed a [m]otion for [s]ummary [j]udgment claiming that the allegations of the [c]omplaint were uncontroverted and[,] therefore, no genuine issue of material fact existed. On January 28, 2013, [MJC] filed [its] response to [Brodsky's motion for summary judgment] as well as a "Motion to Dismiss Complaint with Prejudice for Failure to Join Indispensable Party and Lack of Jurisdiction." The parties filed additional supporting memoranda thereafter.

Upon review of the filings and the allegations therein, [the trial court] determined that there was no genuine issue of material fact. On February 7, 2014, [the court] issued an [o]rder granting [Brodsky's motion for summary judgment], which is the basis of this appeal. [MJC] filed [its notice of appeal] to the Superior Court on March [7], 2014.

Trial Court Opinion, 7/2/2014, at 1-3 (citations omitted). Thereafter, the trial court issued an order directing MJC to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and MJC timely complied, raising nine issues that were prolix in their formulation. The trial court thereafter issued the above-excerpted opinion, which considered and rejected MJC's legal arguments.

We have no authority to consider a case that comes before our court if we lack jurisdiction over the subject matter. Consequently, when a party, or this Court independently, identifies a cloud over our jurisdiction, we must address that question before all others. *See In re Miscin*, 885 A.2d 558, 561 (Pa. Super. 2005) ("We may examine the issue of appealability *sua sponte* because it affects [this] Court's jurisdiction over the case."). Brodsky has identified such a cloud in the instant matter. *See* Brief for Brodsky

- 3 -

at 12. Consequently, our analysis must begin with our jurisdictional authority.

In order to do so, we must address aspects of this case's posture that were omitted from the trial court's account. In Brodsky's complaint, he raised five separate theories of relief. In his first three counts, he sought relief for a fraudulent transfer of assets pursuant to 12 Pa.C.S. §§ 5104(a)(1), (a)(2), and 5105, respectively. Complaint at 3-5. In connection with each of these counts, he requested the following relief:

> (1) [J]udgment in [Brodsky's] favor and against [MJC], pursuant to 12 Pa.C.S. § 5108(b) and (c), in the amount of $500,000, plus interest and costs, or, in the alternative, an [o]rder pursuant to 12 Pa.C.S. § 5107(b) allowing [Brodsky] to execute against the real properties transferred; (2) an [o]rder pursuant to 12 Pa.C.S. § 5107 enjoining [MJC] from further disposition of the properties and any other assets of the debtor; (3) an [o]rder pursuant to 12 Pa.C.S. § 5107 appointing a receiver to take charge of the properties; and (4) other relief as the [c]ourt deems just and proper, including reasonable counsel fees incurred by [Brodsky] in this action.

*Id.* at 4; *see id.* at 5 (same); *id.* at 6 (same).

In his fourth count, Brodsky asserted a claim for a constructive trust, wherein he sought the following relief: "[Brodsky] demands the imposition of a construct[ive] trust enjoining further dissipation or alienation of the properties by [MJC] and other relief as the [c]ourt deems just and proper." *Id.* at 7. In his fifth count, Brodsky sought temporary and permanent injunctive relief: "[Brodsky] prays for an [o]rder enjoining [MJC] from transferring, assigning, encumbering, pledging, or otherwise disposing or

dissipating [the Properties] or any other assets formerly belonging to [Mesko] to anyone except the Bucks County Sheriff, the Lehigh County Sheriff, [Brodsky], or [Brodsky's] counsel until further [o]rder of this [c]ourt." *Id.* at 8.

As noted, *supra*, on December 26, 2013, Brodsky filed a motion for partial summary judgment asserting his right to relief as a matter of law only under counts II and III of his complaint. On January 28, 2014, MJC filed a motion to dismiss Brodsky's complaint with prejudice. Therein, MJC asserted that the trial court lacked jurisdiction because Brodsky failed to name as defendants Mesko and/or Jackson, who MJC argued were indispensable parties. *See* Pa.R.C.P. 1032 ("Whenever it appears by suggestion of the parties or otherwise that . . . there has been a failure to join an indispensable party, the court shall order . . . that the indispensable party be joined, but if that is not possible, then it shall dismiss the action."); *In re Adoption of W.C.K.*, 748 A.2d 223, 227 (Pa. Super. 2000) ("The power of a court to review subject matter jurisdiction at any time during a proceeding is found in [Rule 1032(b)]."). MJC further contended that Brodsky's claims were precluded by the equitable doctrine of laches. The adverse parties to each motion, respectively, filed answers in opposition to those motions.

On February 7, 2014, the trial court issued the following order:

**AND NOW**, this 7th day of February, 2014, upon consideration of [Brodsky's] Motion for Summary Judgment as to Counts II and III of [Brodsky's] Complaint, [MJC's] response, the legal

memoranda submitted and arguments of counsel, it is hereby ORDERED and DECREED that the said Motion is GRANTED and the Prothonotary is directed to enter Judgment pursuant to 12 Pa.C.S. [§] 5108(b) and (c) again[s]t [MJC,] and in favor of [Brodsky], in the principal amount of $315,000.00.

Order, 2/20/2014.[1]  Notably, the trial court did not issue an order acknowledging or addressing MJC's motion to dismiss, although it later acknowledged and addressed these issues in its Rule 1925(a) opinion.

On February 24, 2014, MJC filed a motion for reconsideration. Therein, MJC argued that the trial court erred in awarding a money judgment, which MJC maintained was not permissible under the Act. MJC also contended that the trial court had engaged in impermissible fact-finding in awarding Brodsky summary judgment. As well, MJC reasserted its arguments regarding the failure to join an indispensable party and the doctrine of laches. The trial court took no action on this motion, and MJC filed its timely notice of appeal on March 7, 2014. ***See Valley Forge Center Assocs. v. Rib-It/K.P., Inc.***, 693 A.2d 242, 245 (Pa. Super. 1997) (citing Pa.R.A.P. 1701) ("[A]lthough a party may petition the court for reconsideration, the simultaneous filing of a notice of appeal is necessary to preserve appellate rights in the event that either the trial court fails to grant the petition experessly within 30 days, or it denies the petition.").

---

[1]  Although the order was dated February 7, 2014, it was not docketed or transmitted pursuant to Pa.R.C.P. 236 until February 20, 2014.

Before this Court, Brodsky argues that the order entering partial summary judgment in his favor does not constitute a final, appealable order under Pa.R.A.P. 341. In its statement of jurisdiction, MJC asserts that "[t]he trial court[']s [o]rder granting [s]ummary [j]udgment disposed of all claims to the action and was therefore a final order" under Pa.R.A.P. 341. Brief for MJC at 1. Rule 341 provides, in relevant part, as follows:

> **(a) General rule.** Except as prescribed in subdivisions (d)[] and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.
>
> **(b) Definition of final order.** A final order is any order that:
>
>   (1)  disposes of all claims and of all parties; or
>
>   (2)  is expressly defined as a final order by statute; or
>
>   (3)  is entered as a final order pursuant to subdivision (c) of this rule.
>
> **(c) Determination of finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim[,] or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order. . . .

Pa.R.A.P. 341.

Brodsky erroneously contends that MJC has asserted that our jurisdiction derives from Rule 341(c), and notes that MJC did not request, and the trial court did not make, an "express determination that an

immediate appeal would facilitate resolution of the entire case," as required by Rule 341(c). Brief for Brodsky at 12. The absence of such a determination, Brodsky correctly observes, would preclude our jurisdiction under Rule 341(c). *See Robert H. McKinney, Jr., Assocs., Inc., v. Albright*, 632 A.2d 937, 939 (Pa. Super. 1993) (declining to find an order final pursuant to Pa.R.A.P. 341(c) where the trial court did not make "an express determination that an immediate appeal would facilitate resolution of the entire case"). However, Brodsky clearly misapprehends MJC's assertion of jurisdiction.

On any fair reading, MJC contends solely that the order, having disposed of all claims, was a final order appealable as of right under subdivisions (a) and (b) of Rule 341. Indeed, although MJC reproduces Rule 341(c) along with the other relevant provisions, it does not even refer to that subdivision in its jurisdictional narrative. However, because the finality of the order under Rule 341(a) implicates this Court's jurisdiction, we are not limited to the jurisdictional objection(s) set forth by Brodsky, but may consider any aspect of the issue *sua sponte*. *See W.C.K.*, *supra*. Hence, in the discussion that follows, we focus upon the question of Rule 341(b)(1) finality.

In granting summary judgment just as to counts II and III of Brodsky's complaint—which is all that Brodsky sought in his motion—the court, at least on paper, left three counts unresolved, one under the FTA, another prayer for relief in the form of the imposition of a constructive trust,

and a third seeking injunctive relief. As well, the trial court never docketed an order disposing of MJC's motion to dismiss, which, in addition to laches, raised a challenge to the trial court's jurisdiction over the instant matter on the basis that Brodsky failed to name certain indispensable parties as defendants in this action.

Our case law is nearly as clear as the plain language of Rule 341: "This [C]ourt has held that an appeal will not lie from an order granting partial summary judgment." **Malanchuk v. Sivchuk**, 106 A.3d 789, 793 (Pa. Super. 2014) However, as in **Malanchuk**, the bulk of our cases upholding this principle involve the entry of partial summary judgment in favor of defendants, not entries of money judgments against plaintiffs that may be inferred to respond fully to the plaintiff's prayers for relief. This seems a fair characterization at least of Brodsky's facially unresolved first count under the FTA, given that he was granted a substantial award, albeit not as great as he requested in his complaint, on two other counts under the Act.

Nonetheless, "[a] final order is one which 'serves to put the litigant out of court either by litigation or disposing of the case entirely.'" **Matlock v. Matlock**, 664 A.2d 551, 553 (Pa. Super. 1995) (quoting **Foflygen v. R. Zemel, M.D. (PC)**, 615 A.2d 1345, 1350 (Pa. Super. 1992)). Even setting aside count I (FTA) for argument's sake, Brodsky's additional claims for a constructive trust or other injunctive relief remain undecided by the trial court. Were these counts unambiguously stated in alternative terms in the

- 9 -

complaint, we might be prepared to infer their implicit resolution based upon the trial court's entry of a sizable money judgment, as requested by Brodsky in his counts under the FTA. However, we do not find such clarity in Brodsky's complaint on this point.

Moreover, we find significant the fact that Brodsky affirmatively challenges our jurisdiction on this basis. *See* Brief for Brodsky at 12. Although it is possible that he does so merely to be vexatious or out of fear that this Court might reverse the trial court's entry of summary judgment and remand for trial, it nonetheless suggests that Brodsky does not consider the judgment entered in his favor to have exhausted his avenues for relief or his desire to travel them. It would serve little purpose, and would risk imprudence, for us to impute any specific motive for challenging this Court's jurisdiction or to speculate more than idly as to his intentions. But based upon the record and the arguments before us, we cannot say with absolute confidence that Brodsky might not further benefit from the pursuit of relief under at least counts IV and V of his complaint, if not also under count I.

Aside from the technical considerations that preclude us as a matter of law from deciding cases over which we do not have jurisdiction, there are concomitant, if not animating, practical concerns. Chiefly, demanding finality as to all claims and all parties before appeal reduces the likelihood of piecemeal litigation, which is disfavored both out of concern for the protraction of litigation and the concomitant burden on the courts, and because "an appellate court is more likely to decide a question accurately

after judgment, where it may consider the claim in the context of a complete adjudication and a fully developed record." ***Rae v. Penna. Funeral Dirs. Ass'n***, 977 A.2d 1121, 1129-30 (Pa. 2009). The trial court's omission clearly to address the remaining counts has left us with, at best, a mere suggestion that, in entering a money judgment on counts II and III under the FTA, the trial court intended to resolve this matter entirely. However, a mere suggestion does not suffice to perfect our jurisdiction. Consequently, we must conclude that MJC appeals an interlocutory order that is subject to no exception to the requirement of finality, leaving us without jurisdiction to evaluate the issues raised on the merits at this time.

This does not end our review, however. We also must differ with the trial court's refusal to review on the merits its jurisdiction over the case due to the alleged omission of an indispensable party. This issue was raised by MJC in several filings, including MJC's motion to dismiss and its motion for reconsideration. The court explained as follows:

> First, [the trial court] provide[s] a brief timeline of the filings at issue . . . . On January 28, 2014, [MJC] filed both a Response to the Motion for Summary Judgment as well as a "Motion to Dismiss Complaint with Prejudice for Failure to Join Indispensable Party and Lack of Jurisdiction." On February 6, 2014, [Brodsky] properly moved for disposition on his Motion for Summary Judgment by filing a praecipe pursuant to Bucks County Rule of Civil Procedure 208.3(b). On February 7, 2014, [the trial court] issued an order granting [Brodsky's motion], which is the basis of this appeal.
>
> [The trial court's] file reflects that [MJC's] Motion to Dismiss, after moving through the usual channels of the [trial court's] administration, was not received until after we issued our February 7, 2014 order granting summary judgment. Thus,

- 11 -

> [MJC's] various arguments regarding the alleged failure to join indispensable parties and the [trial court's] alleged lack of jurisdiction were not issues before [the trial court]. We further note that the case at hand was initiated in May 2013. [MJC] had sufficient time and opportunity to raise said arguments prior to the Motion for Summary Judgment.

T.C.O. at 15-16.

The trial court's basis for essentially deeming MJC's motion to dismiss waived is perplexing. First, the trial court's characterization of the procedural history is not supported by the record: Whatever the "usual channels of the [trial court's] administration," it is the docket itself that governs timeliness. According to the docket, not only was MJC's motion to dismiss filed on January 28, 2014, over a week before the trial court's order dated February 7, 2014 allegedly issued, but MJC actually filed the motion **more than two weeks before** the trial court's summary judgment order was properly docketed and served upon the parties on February 20, 2014, which is the only date that matters, as per Pa.R.C.P. 236. *See* *supra* n.1. Moreover, the trial court retained power to consider this issue at least until MJC filed its notice of appeal on March 7, 2014, approximately two weeks after the summary judgment order was entered and more than a month after MJC filed its motion to dismiss. The inefficiency of a given trial court's administrative machinery cannot be held against the party, as the trial court seems to have done here.

More importantly still, as the trial court recognizes, a challenge to the failure to join an indispensable party implicates the trial court's subject

- 12 -

matter jurisdiction. T.C.O. at 16 (acknowledging MJC's "various arguments regarding . . . [the trial court's] alleged lack of jurisdiction"). As such, it can be raised **at any time** by the parties or the trial court or this Court, *sua sponte*. **W.C.K.**, 748 A.2d 223, 227 (Pa. Super. 2000) ("The power of a court to review subject matter jurisdiction at any time during a proceeding is found in [Rule 1032(b)]"); *see **In re Patterson's Estate***, 19 A.2d 165, 166 (Pa. 1941) ("The want of jurisdiction over the subject-matter may be questioned at any time. It may be questioned either in the trial court, **before or after judgment**, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved . . . ." (emphasis added)); ***Fitzpatrick v. Shay***, 461 A.2d 243, 246-247 (Pa. Super. 1983) (finding that an indispensable party argument was not waived when it was raised in a motion for summary judgment rather than in the pleadings). What it cannot be is ignored.

Pennsylvania Rule of Procedure 1032 provides, in relevant part, as follows:

> (a)  A party waives all defenses and objections which are not presented either by preliminary objections, answer or reply, except . . . the defense of failure to join an indispensable party . . . and any other **nonwaivable defense** or objection.
>
> (b)  **Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the . . . indispensable party be joined**, but if that is not possible, then it shall dismiss the action.

Pa.R.C.P. 1032 (emphasis added).

"[A]n indispensable party is one whose rights are so directly connected with and affected by litigation that he must be a party of record to protect such rights . . . ." *Mechanicsburg Area Sch. Dist. v. Kline*, 431 A.2d 953, 957 (Pa. 1981) (quoting *Columbia Gas Transmission Corp. v. Diamond Fuel Co.*, 346 A.2d 788, 789 (Pa. 1975)).

> The determination of an indispensable party question involves at least these considerations:
>
> 1.     Do absent parties have a right or interest related to the claim?
>
> 2.     If so, what is the nature of that right or interest?
>
> 3.     Is that right or interest essential to the merits of the issue?
>
> 4.     Can justice be afforded without violating the due process rights of absent parties?

*Id.* at 956. "All [these] considerations . . . are themselves conclusions of law to be made by the court after due consideration. Bare factual allegations of a party are not dispositive of the issues underlying the indispensable party question." *Id.* at 958 n.8. Because it presents a question of law, if we faced an adequate record containing sufficient undisputed facts to enable us to make the legal determination, we would do so. However, our review of the record satisfies us that it does not so suffice.

MJC asserts that both Jackson and Mesko are indispensable parties. Regarding Jackson, MJC argues that, as the sole proprietor of MJC, he stands to lose everything in the event of an adverse verdict enabling Brodsky to

execute upon the properties that Mesko transferred to MJC on the eve of his guilty plea. With regard to Mesko, MJC appears to argue that Mesko's interest lies variously in the fact that, as the transferor, he is essential to resolving claims that hinge upon Mesko's intentions in transferring those properties or perhaps based upon his half interest in Mesko Landscaping, a partnership that appears from the record to be owned in equal shares by Mesko and Jackson.

It would be unusual, to say the least, that Jackson would be an indispensable party solely based upon his sole ownership of MJC. On its face, this would run counter to one of the purposes of the corporate form: To create a separate legal entity conferring upon its owner(s) the substantial benefit of protection from personal liability. *See Kellytown Co. v. Williams*, 426 A.2d 663, 668 (Pa. Super. 1981) ("Even when a corporation is owned by one person . . ., the corporate form shields the individual member[] of the corporation from personal liability . . . .); *but see Newcrete Prods. V. City of Wilkes-Barre*, 37 A.3d 7, 12 ("Where a corporation operates as a mere façade for the operations of a dominant shareholder, the dominating shareholder may be held liable for the corporation's inequitable conduct perpetrated through the use of the corporate form's protections."). Moreover, one need ponder only a moment to recognize that, were we to treat owners of corporate parties to litigation as indispensable to any litigation affecting the corporation, we would wreak havoc on the roles of shareholders in corporations subject to suit. However,

we cannot say with certainty that factual matters not of record would reveal complications to this general truth such that Jackson or Mesko would emerge as indispensable parties to this litigation. This is especially true inasmuch as the parties' personal and professional connections clearly colored the series of transactions underlying this dispute. Moreover, the parties squarely contest the question of consideration for the challenged transfers, which is a critical consideration in any dispute under the FTA, including asserting that Jackson's allegedly uncompensated work with and for Mesko for over a year before the transfers, itself, constituted consideration well in excess of the documented $1.00 sale price of the two parcels at issue. Thus, the trial court's failure to address on the record the merits of MJC's jurisdictional challenge is problematic, in that it fails to resolve an open jurisdictional challenge that Pennsylvania law makes clear must be resolved on its merits no matter when it is raised. Rather than attempt to resolve this issue on our own and risk usurping the trial court's role as the fact-finder, we direct the trial court to evaluate this issue in the first instance.

For the foregoing reasons, *i.e.*, the trial court's failure expressly to resolve each of Brodsky's claims, we find that we lack jurisdiction to review MJC's arguments on appeal at this time. Accordingly, we quash MJC's appeal and remand. On remand, we direct the trial court to consider MJC's motion to dismiss and more generally whether Mesko, Jackson, Mesko Landscaping, or any other entity or person has a legally recognized due process interest in participating in the instant litigation. If the trial court

finds that any indispensable party is absent from the litigation, it must effectuate one of the two remedies prescribed by Rule 1032(b) (*i.e.*, joinder of the indispensable party or dismissal of the action).

Appeal quashed.[2]

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015

---

[2] Our quashal of this appeal precludes our consideration of any remaining issues, including MJC's argument that Brodsky's claim should be barred by the doctrine of laches. Our disposition is without prejudice to MJC's right to renew this concern in any future appeal arising from this matter.