IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,      :
Department of Corrections          :
                                   :
            v.                     :
                                   :
Demetrius J. Grant,                :      No. 1881 C.D. 2019
                    Appellant      :      Submitted: March 8, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: May 15, 2024


          Demetrius J. Grant (Grant) appeals from the April 5, 2018, order of the
Court of Common Pleas of Fayette County (trial court).  The trial court granted an
indefinite injunction to the Department of Corrections (DOC), which had sought a
preliminary injunction to administer medical treatment and food to Grant after he
engaged in a hunger strike in March 2018 while incarcerated at the State Correctional
Institution at Fayette (SCI-Fayette).  DOC has filed a motion to quash Grant's appeal
as untimely and Grant has filed an application for *nunc pro tunc* appellate relief.
Upon review, we grant Grant's application for *nunc pro tunc* relief, deny DOC's
motion to quash, vacate the trial court's April 5, 2018, order, and remand for further
proceedings in accordance with this opinion.


                    **I. Procedural & Factual Background**

          On April 3, 2018, DOC filed a complaint, application for *ex parte*
preliminary injunction, and motion for preliminary injunction with the trial court.

Original Record (O.R.) #1-#4.  DOC alleged that Grant, who had not been deemed mentally unfit, had refused his medication and meals since March 20, 2018.  O.R. #1 at 2.  Grant maintained that his hunger strike was due to issues over his property and a misconduct on his record.  *Id*.  According to an attached declaration by SCI-Fayette's medical director, Dr. Michael Herbik, Grant was in danger of imminent and irreparable physical harm up to and including death if he persisted in his strike.  *Id*. at 3 & O.R. #3.  Dr. Herbik added that Grant's strike, if allowed to continue, would also disrupt the orderly administration of SCI-Fayette.  *Id*.  DOC asked the trial court for authority to feed and medicate Grant, by force if needed, to preserve his health and life.  *Id*. at 4.

Still on April 3, 2018, the trial court issued an order granting DOC's application for *ex parte* preliminary injunction and scheduled a hearing on DOC's motion for preliminary injunction for April 5, 2018.  O.R. #5.  On April 4, 2018, the trial court appointed a public defender to represent Grant at the hearing.  O.R. #6.  At the hearing, however, the trial court dismissed the public defender because the matter was not within the purview of appointed counsel.  Notes of Testimony (N.T.), April 5, 2018, at 10.

Dr. Herbik testified at the hearing that Grant had refused his seizure medication and lost about 30 pounds, and that his continued refusal to eat could lead to irreparable kidney failure, coma, and perhaps death.  N.T., April 5, 2018, at 20-25.  Dr. Herbik acknowledged that if the trial court granted the injunction, medical staff would medicate and feed Grant by means of a gastric tube if he continued to refuse.  *Id*. at 25.  Dr. Herbik noted that even if Grant ate a few meals, he would not be back to baseline health without consistent nutrition.  *Id*. at 26-27.  Nedra Rice, healthcare administrator at SCI-Fayette, testified about the impact of inmate hunger

strikes on prison operations, including the diversion of medical staff from other inmates with medical needs. *Id*. at 12-15. Rene Adams, SCI-Fayette's deputy superintendent, testified that Grant had been transferred from SCI-Rockview on March 15, 2018, to be closer to family, but had been written up due to contraband drugs in his property and transferred to restricted housing on March 19, 2018. *Id*. at 32-34. He began his hunger strike the next day and was written up again for misconduct on March 27, 2018. *Id*. Ms. Adams echoed Ms. Rice's testimony concerning the impact of a hunger strike on the prison's medical staff and general operations. *Id*. at 33. Grant testified remotely that his strike was in response to the write-ups for misconduct, which he denied. *Id*. at 39-41.

On the record, the trial court stated that the injunction would be granted, and the order would be filed that day. N.T., Apr. 5, 2018, at 46-47. The court advised Grant on the record that he had the right to appeal within 30 days. *Id*. at 47. However, rather than granting the preliminary injunction sought by DOC, the trial court's April 5, 2018, written order granted "an indefinite injunction" authorizing prison medical staff to act as necessary to preserve Grant's life and health as long as he remained in DOC custody. O.R. #7. Relevant to this appeal, the order's cover page indicated that the public defender was still counsel of record for Grant and the trial court's docket entry for the order stated: "same day copies issued." *Id*.; Trial Ct. Docket, Apr. 5, 2018. On April 6, 2018, the trial court issued an order formally dismissing the public defender from the matter. O.R. #8. Although Grant presumably knew generally of the trial court's intended disposition from the hearing, there is no indication in the docket or record that a copy of the April 5, 2018, written order was sent directly to him.

3

Grant did not appeal the trial court's order,[1] and the trial court's docket contains no further entries until August 8, 2019, when Grant filed an emergency motion to modify the injunction (dated August 5, 2019). Trial Ct. Docket, Aug. 8, 2019. Grant, now at SCI-Albion,[2] averred that the trial court erred in granting DOC what amounted to a permanent injunction. O.R. #9 at 2. He also alleged that medical staff at SCI-Albion had wrongfully manipulated and abused their mandate from the order. *Id.* at 5.

On August 20, 2019, this Court received from Grant a notice of appeal (dated August 1, 2019) in which he asserted that he had not received the trial court's April 5, 2018, order until July 8, 2019, and now wished to appeal it. O.R. #10. However, pursuant to Pennsylvania Rule of Appellate Procedure 905(a)(1), notices of appeal are to be filed with the trial court. Pa.R.A.P. 905(a)(1). Accordingly, on September 25, 2019, this Court forwarded Grant's August 2019 notice of appeal to the trial court's prothonotary, which received and docketed it on September 30, 2019. O.R. #10.

On that date, the trial court received from Grant a second emergency motion to modify (or dissolve) the injunction, dated September 25, 2019. O.R. #11. He alleged, in relevant part, that SCI-Albion medical staff were using the trial court's April 5, 2018, order as a "tool for retribution and deterrence" against him because he engaged in another hunger strike in April-June 2019. *Id.* at 4-6. DOC answered the motion, confirming that Grant engaged in another hunger strike in April-June

---

[1] In a subsequent filing, Grant stated that he resumed eating on June 14, 2018. O.R. #17 at 2.

[2] In a subsequent filing, Grant asserted that he was transferred from SCI-Fayette to SCI-Albion in Erie County on June 19, 2018. O.R. #11 at 9.

2019, which DOC asserted "makes the case for continuing the injunction" authorizing DOC to forcibly feed and treat him. O.R. #13 at 5.

On November 1, 2019, the trial court issued an order denying Grant's September 2019 motion to modify the injunction. O.R. #14. The trial court explained in a related opinion that a hearing was not needed because Grant had not identified any factual changes since the April 2018 order. O.R. #15 at 3. Instead, the trial court concluded that the facts asserted by Grant reinforced the need for the injunction because he admittedly engaged in another hunger strike that required medical treatment and food to preserve his health and life. *Id*. at 4. The record includes a hard copy of the November 1, 2019, order in an envelope addressed to Grant at SCI-Albion and mailed on November 4, 2019, but returned to the trial court on or about November 23, 2019, and marked "refused-unable to forward." O.R. #14.

On March 19, 2020, Grant filed with the trial court a motion to reinstate his appeal rights *nunc pro tunc* (dated March 16, 2020) with regard to the trial court's April 5, 2018, order. O.R. #18. He reasserted from his August 2019 notice of appeal erroneously filed with this Court that he never received the trial court's April 2018 order until July 2019. *Id*. #18 at 2. He posited that the order was sent to the appointed public defender, who was still of record as of April 5, 2018, before the trial court's April 6, 2018, dismissal order. *Id*. Grant also asserted that he did not learn of the trial court's November 1, 2019, order denying his September 2019 motion to modify the injunction until earlier in March 2020 when he asked the trial court for his case status and was sent a printout of the docket. *Id*. As noted above, the November 2019 order had been sent to him but returned as undelivered; he asserted, however, that his appeal rights had been interfered with and obstructed by the trial court prothonotary. *Id*.

5

On May 8, 2020, while Grant's March 2020 *nunc pro tunc* motion was pending with the trial court, he refiled with this Court his August 2019 notice of appeal of the trial court's April 5, 2018, order. Notice of Appeal, May 8, 2020. He appended to the notice of appeal a May 6, 2020, letter from the trial court prothonotary to this Court's prothonotary. *Id*. The letter stated that on April 27, 2020, Grant had written to the trial court prothonotary asking why his August 2019 notice of appeal had not been processed. *Id*. The trial court prothonotary discovered that due to a clerical error, when this Court returned Grant's August 2019 notice of appeal to the trial court in September 2019, the trial court had failed to process and address it, but the trial court prothonotary advised that the previous notice of appeal had now been processed. *Id*. This Court formally docketed Grant's May 2020 notice of appeal, granted his request to proceed *in forma pauperis*, denied his request for appointed counsel, and on July 1, 2020, issued a record request to the trial court.

In a July 7, 2020, order, the trial court granted Grant's March 2020 motion for *nunc pro tunc* relief and restored his appeal rights from the November 1, 2019, order denying his September 2019 motion to modify the injunction. O.R. #21. Grant was directed to file a statement of errors complained of on appeal within 21 days pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). *Id*. On July 28, 2020, in response to Grant's request for clarification, the trial court issued a further order stating that Grant's appeal rights were limited to the trial court's November 1, 2019, order and did not include any previous orders (*e.g.*, the trial court's April 5, 2018, order). *Id*. Grant was given an additional 21 days to file his Rule 1925(b) statement, a deadline of August 18, 2020. *Id*.

Grant did not file a Rule 1925(b) statement, nor did he file a notice of appeal concerning the trial court's November 1, 2019, order. Instead, on August 18,

2020, he filed with the trial court a second motion to reinstate his appeal rights *nunc pro tunc* (dated August 7, 2020). O.R. #25. He reiterated that he never received a copy of the trial court's April 5, 2018, order and that it had not been properly noticed to him or marked in the trial court's docket pursuant to Pennsylvania Rule of Civil Procedure 236(a), which states that the prothonotary "shall immediately give written notice of the entry" of any order to each party and note same in the docket.[3] *Id.* at 1-2 (citing Pa.R.Civ.P. 236(a)(2), (b)). *Id.* He asserted that this constituted a breakdown in court operations entitling him to *nunc pro tunc* appeal rights concerning the trial court's April 5, 2018, order granting the indefinite injunction. *Id.* Later that day, the trial court denied the order without further comment. O.R. #24.

On September 23, 2020, the trial court issued a statement in lieu of an opinion pursuant to Rule of Appellate Procedure 1925(a)(1). O.R. #27. The trial court stated that upon receiving this Court's July 1, 2020, notice of docketing appeal and record request, it had reviewed the entire file. *Id.* at 4. The court explained that Grant had not appealed the April 5, 2018, order within 30 days, that his August 8, 2019, motion to modify the injunction had not been put through motions court, so it never reached the trial court, and that his August 15, 2019, notice of appeal to this Court had not been served on the trial court. *Id.* at 2. The trial court noted that Grant's September 30, 2019, motion to modify the injunction had been properly filed, resulting in the trial court's November 1, 2019, order and opinion denying that motion. *Id.* at 3. The trial court added, however, that Grant had not appealed the November 1, 2019, order within 30 days, that his March 19, 2020, *nunc pro tunc* motion had not been put through motions court, so it never reached the trial court,

---

[3] As noted, the trial court prothonotary indicated on the April 5, 2018, docket entry that "same day copies" of the order had been issued. Trial Ct. Docket.

and that his May 6, 2020, notice of appeal to this Court (a duplicate of his August 2019 notice of appeal) had not been served on the trial court. *Id*.

The trial court stood by its November 1, 2019, order denying Grant's September 2019 motion to modify the injunction because he had not shown a factual basis for modification. *Id*. at 4. The trial court noted that Grant never filed a Rule 1925(b) statement or otherwise noticed an appeal of the November 1, 2019, order denying his September 2019 motion.[4] *Id*. Returning to Grant's pending August 2019 appeal of the April 5, 2018, order, the trial court recommended that this Court quash it as untimely. *Id*. at 5.

On October 5, 2020, this Court issued an order asking the parties to address the timeliness of Grant's appeal. Order, Oct. 5, 2020. On October 20, 2020, DOC filed a motion to quash Grant's August 2019 appeal of the April 5, 2018, order as untimely. On November 30, 2020, this Court issued an order stating that the timeliness of Grant's appeal would be addressed along with the merits. Order, Nov. 30, 2020.

---

[4] Grant's failure to file a Rule 1925(b) statement in compliance with the trial court's July 7, 2020, and July 28, 2020, orders regarding the November 1, 2019, order resulted in the waiver of any issues he might have raised regarding that order. *See In re Clinton Cnty. Tax Claims Bureau*, 109 A.3d 331, 335 (Pa. Cmwlth. 2015). Moreover, although the trial court's July 2020 orders reinstated Grant's appeal rights as to the November 1, 2019, order, he never formally filed a notice of appeal of that order either.

Therefore, the only appeal properly before this Court is Grant's August 2019 appeal of the trial court's April 5, 2018, order, which is addressed below in terms of DOC's motion to quash and Grant's *nunc pro tunc* motion to restore his appeal rights of that order. Recalling that the trial court failed to process Grant's August 2019 notice of appeal when this Court forwarded it to the trial court after Grant erroneously filed it here instead of with the trial court, we note that the trial court never ordered Grant to provide a Rule 1925(b) statement for his August 2019 appeal of the April 2018 order.

On January 8, 2021, Grant filed with this Court an application for *nunc pro tunc* relief (dated December 30, 2021). Appl. for Relief, Jan. 8, 2021. He reiterated that he had never received the trial court's April 5, 2018, order and stated that he could prove it because prison mail records would show that he had not signed for any legal mail during the relevant time. *Id*. He averred that the trial court's docket entry stating that same-day copies of the order were issued was "specious" because it did not specify that copies were actually mailed to the parties. *Id*. He argued that his August 2019 appeal of the April 2018 order was timely because it occurred within 30 days of July 18, 2019, when he finally did receive the order. *Id*. He appended a copy of a prison staff request form that he completed on June 25, 2019, in which he asked about getting a copy of the April 2018 order. *Id*. (Ex. B). The form was marked received by prison staff on June 27, 2019, and then returned and received by prison medical unit staff on July 1, 2019, with a copy of the order attached; presumably, the order was then provided to Grant, after which in August 2019 he filed his notice of appeal to this Court and his motion to modify the injunction to the trial court, both of which sought to challenge the trial court's April 5, 2018, order. *Id*.

On February 4, 2021, this Court issued an order stating that Grant's *nunc pro tunc* application would be decided along with the merits. The matter was extended and stayed multiple times until January 19, 2023, when Grant filed his brief addressing the timeliness and merits of his appeal. DOC filed a responsive brief on February 16, 2023, and this matter is now ripe for determination.

9

## II. Discussion

We first address DOC's motion to quash Grant's appeal as untimely and Grant's corresponding motion for *nunc pro tunc* relief. There is no dispute that Grant's August 2019 appeal of the trial court's April 5, 2018, order was untimely. Therefore, we consider the well-settled law on *nunc pro tunc* appellate relief:

> An appeal *nunc pro tunc* is only warranted . . . in extraordinary circumstances "involving fraud or some breakdown in the court's operation," or where the delay is caused by non-negligent circumstances either by the claimant or a third party. . . . Where non-negligent circumstances cause the untimeliness of an appeal, the appeal must be filed within a short period of time after learning of the untimeliness. It is well-settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and the burden is a heavy one.

*Harris v. Unemployment Comp. Bd. of Rev.*, 247 A.3d 1223, 1229-30 (Pa. Cmwlth. 2021) (citations omitted). To show an operational breakdown, the error must be "readily apparent." *Id.* at 1231. With regard to establishing non-negligent circumstances, the party seeking relief "must proceed with reasonable diligence once he learns of the necessity to act." *Id.* at 1232 (emphasis removed). This includes reasonable diligence in learning of the necessity to act. *Id.* Our Supreme Court has explained:

> The correct inquiry in determining whether [a petitioner's] conduct resulted in a want of due diligence is to focus not upon what the [petitioner] knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him. What the law requires of petitioner is to discover those facts which were discoverable through the exercise of reasonable diligence. In the instant case, petitioner had not only to discover the facts surrounding his claim, but also to ascertain the legal consequences of those facts.

*Sprague v. Casey*, 550 A.2d 184, 188 (Pa. 1988).  Where the party seeking *nunc pro tunc* relief has shown sufficient effort on his own behalf and the facts present a "unique and compelling" basis, this Court has allowed the requested relief.  *Harris*, 247 A.3d at 1235.

In its motion to quash, DOC referred to the trial court's docket indicating that same-day copies of the April 5, 2018, order were issued; DOC emphasized that Grant had participated in the hearing earlier that day when the trial court announced on the record that it would grant DOC's requested injunction and that Grant had 30 days to appeal.  Application for Relief, Oct. 20, 2020, at 3.  DOC characterized Grant's position that he did not receive the order as unsupported and insufficient to establish a breakdown sufficient to warrant *nunc pro tunc* relief.  *Id.* DOC's position corresponds with the trial court's September 2020 Rule 1925(a) statement, which concluded that Grant's appeal should be quashed as untimely.  O.R. #27 at 2-5.

Grant reiterates that he did not receive the April 2018 order until July 18, 2019; that the trial court prothonotary's docket entry for the order indicated only that same-day copies were issued rather than mailed to him as a party; that the prothonotary's failure to properly notice and provide him with the order violated Civil Procedure Rule 236(a) and constituted a breakdown; and that once he received the order on July 18, 2019, he appealed it to this Court timely as his notice of appeal was dated August 1, 2019.  Grant's Br. at 8-9.

### A. Trial Court's Failure to Mail the Order Directly to Grant

The record confirms that on April 5, 2018, the trial court held a hearing on DOC's motion for preliminary injunction and that the written order granting the

11

injunction indefinitely was issued that day. N.T., Apr. 5, 2018; O.R. #7. As of that date, the appointed public defender was still listed as Grant's counsel of record; the public defender was not formally dismissed until April 6, 2018. O.R. #7 & #8. The trial court's docket for the April 5, 2018, order indicates that "same-day" copies of the order were issued; therefore, the order was presumably provided by the prothonotary to the public defender rather than directly to Grant. *See id.* However, the order along with the means of notice ("same-day copies issued") was properly marked in the trial court's docket. Transmittal of the order to counsel was not sufficient to constitute a clear breakdown or violation of Civil Procedure Rule 236(a). *King v. Riverwatch Condominium Owners' Ass'n*, 27 A.3d 276, 279 (Pa. Cmwlth. 2011) (stating that Rule 236(a) requires only that the prothonotary send notices to attorneys of record and is not obligated to send to a party directly if the party is represented).

## B. Grant's Non-Negligence

This Court's docket facially supports Grant's assertion that he did not receive a copy of the trial court's April 5, 2018, order until July 2019. His January 2021 *nunc pro tunc* application to this Court included his June 25, 2019, request that prison staff obtain it for him while he was in the infirmary unit at SCI-Albion. Ex. B. to Appl. for Relief, Jan. 8, 2021. The form was stamped and marked as returned with the order to the infirmary on July 1, 2019; presumably, the order was then provided to him. *Id.* This Court received his appeal on August 15, 2019, but the DOC cash slip also appended to Grant's *nunc pro tunc* application indicates that he provided it to prison authorities for mailing on August 1, 2019. Ex. C. to Appl. for

Relief, Jan. 8, 2021. Accordingly, to the extent Grant asserts that he received the order on or about July 18, 2019, his appeal was timely.

The trial court told Grant on the record at the April 5, 2018, hearing that the order granting the injunction "will be filed today" and that he had 30 days to appeal it. N.T., Apr. 5, 2018, at 46-47. However, the trial court did not state at the hearing that the injunction would be anything more than the preliminary injunction the DOC had sought. Because the written order apparently was sent to appointed counsel of record prior to counsel's dismissal, Grant would not have known that the order, as actually issued, granted the DOC's injunction on an indefinite basis for the duration of his time in DOC custody.

Grant resumed eating voluntarily on June 14, 2018, shortly before being transferred to SCI-Albion on June 19, 2018. O.R. #17 at 2; O.R. #11 at 9. It was not until April 2019, as he acknowledged to the trial court in his September 2019 motion to modify the injunction, that he engaged in another hunger strike. O.R. #11 at 4-6. At that point, DOC relied on the order to forcibly feed him and he learned that it was still in effect. O.R. #11 at 4-6.

Pursuant to *Sprague*, we must focus on what Grant "might have known, by the use of the means of information within his reach, with the vigilance the law requires of him" in order to "discover those facts which were discoverable through the exercise of reasonable diligence," along with "the legal consequences of those facts." 550 A.2d at 188. Certainly, Grant could have requested a copy of the April 5, 2018, order when he did not receive it after the hearing that day. However, because the DOC sought only a preliminary injunction and the trial court indicated at the hearing that it would grant an injunction, it was not unreasonable for Grant to believe that only a preliminary injunction had been ordered and that the order was

13

no longer viable after he began eating in June 2018, then was transferred shortly thereafter to SCI-Albion, which is located in another county.[5] As he apparently did not intend to appeal the preliminary injunction, he had no particular need for a copy of the written order, and he did not act unreasonably in failing to inquire about the written order when he failed to receive it.

As set forth above, once Grant knew in June 2019 that the April 5, 2018, order granted DOC indefinite authority to forcibly medicate and feed him, he acted diligently and non-negligently to acquire it in July 2019, and he promptly filed both a motion to modify the injunction with the trial court and a notice of appeal to this Court. Given the particular circumstances, Grant has shown sufficient effort on his own behalf and presented unique and compelling facts so as to warrant relief. *See Harris*, 247 A.3d at 1235. Accordingly, we deny DOC's application to quash Grant's appeal, grant Grant's application for *nunc pro tunc* relief, and proceed to the merits.

### C. Preliminary Injunction

While Grant's appeal was pending, this Court issued *Department of Corrections v. Alston*, ___ A.3d ____ (Pa. Cmwlth., No. 1119 C.D. 2020, filed February 15, 2022). The facts in *Alston* are virtually identical to those here. In each case, DOC filed a motion for an *ex parte* injunction and a preliminary injunction to forcibly feed a hunger-striking inmate. *Id*. at ____, slip op. at 1; O.R. #4. In each case, the trial court granted the *ex parte* injunction and held a hearing shortly thereafter on the preliminary injunction, at which DOC counsel confirmed on the

---

[5] As Grant pointed out in one of his filings, DOC's healthcare policy states that inmates may be subject to invasive medical treatment without consent pursuant to a court order, but "[t]he authority terminates with revocation of the order or when the inmate is no longer located in the county where the order was issued." O.R. # 11 (citing DOC Policy 13.1.1 § A.7.b, f).

14

record that the relief sought was a preliminary injunction. *Id.* at ____, slip op. at 2; N.T., April 5, 2018, at 8. In each case, although DOC sought only a preliminary injunction, the trial court instead granted an indefinite injunction to remain in effect for the duration of the inmate's time in DOC custody. *Id.* at ____, slip op. at 4; O.R. #7.

In *Alston*, this Court analyzed Civil Procedure Rule 1531, which governs preliminary injunctions and provides that a court may grant an *ex parte* injunction but must hold a hearing on a preliminary injunction within five days, after which "the court shall make an order dissolving, continuing or modifying the injunction." Pa.R.Civ.P. 1531(e). We stated:

> A court may not treat a hearing for a preliminary injunction as a final hearing on the merits of a permanent injunction unless the parties stipulate to that effect. This is because it is unfair to reach a final decision after a preliminary proceeding. A litigant may not prepare as completely as he would have had he realized that he was not going to receive a second chance to present his case. Further, the standards for a preliminary injunction and a permanent injunction differ. A preliminary injunction requires imminent, irreparable harm, while a permanent injunction is founded on the lack of an adequate remedy.

*Alston*, ___ A.3d at ____, slip op. at 6-7 (citations and quotation marks omitted). Therefore, if a hearing is held on a preliminary injunction, the most the trial court may do is dissolve, continue, or modify the previously granted *ex parte* injunction; granting permanent or indefinite relief is beyond the court's authority pursuant to Rule 1531. *Id.* at ____, slip op. at 7. *Alston* is on all fours with this case, and we find its reasoning persuasive here. Therefore, we conclude that the trial court erred in granting DOC an indefinite injunction.

As in *Alston*, we vacate the April 5, 2018, order, and remand to the trial court for further disposition. *See Alston*, ___ A.3d at ____, slip op. at 8 & Order. DOC, which agrees that the order should be vacated based on *Alston*, suggests that upon remand, the proceedings "will likely include a praecipe to withdraw [its] complaint due to Grant's incarceration in a different county" now that he is at SCI-Albion in Erie County. DOC Br. at 2. In the alternative and if necessary, the trial court should consider on remand whether DOC's original complaint and injunction filings are moot, whether it continues to have personal jurisdiction over Grant, or whether to transfer the matter to Erie County pursuant to Civil Procedure Rule 1006, which governs venue changes. Pa.R.Civ.P. 1006. In this regard, we note DOC's healthcare policy stating that inmates may be subject to invasive medical treatment without consent pursuant to a court order, but "[t]he authority terminates with revocation of the order or when the inmate is no longer located in the county where the order was issued." DOC Policy 13.1.1 § A.7.b, f).

## III. Conclusion

In light of the foregoing discussion, Grant's application for *nunc pro tunc* appellate relief is granted and DOC's motion to quash is denied. On the merits, the trial court's April 5, 2018, order is vacated, and this case is remanded to the trial court for further disposition in accordance with *Alston* and this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,     :
Department of Corrections          :
                                   :
            v.                     :
                                   :
Demetrius J. Grant,                :     No. 1881 C.D. 2019
                    Appellant      :

# **O R D E R**

AND NOW, this 15th day of May, 2024, the application for *nunc pro tunc* relief filed by Demetrius J. Grant (Grant) is GRANTED. The application of the Department of Corrections (DOC) seeking to quash as untimely Grant's appeal to this Court of the April 5, 2018, order of the Court of Common Pleas of Fayette County is DENIED. That order is VACATED and the matter is REMANDED for further disposition in accordance with *Department of Corrections v. Alston*, ___ A.3d ____ (Pa. Cmwlth., No. 1119 C.D. 2020, filed February 15, 2022), and this opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge